No. 48,609

STATE OF KANSAS, *Appellee,* v. CARL A. BUCKNER, a/k/a Carl Phillips, *Appellant.*

(574 P.2d 918)

Opinion filed November 22, 1977.

*Michael C. Helbert,* of Atherton, Hurt & Sanderson, of Emporia, argued the cause and was on the brief for appellant.

*Michael G. Patton,* county attorney, argued the cause and *Curt T. Schneider,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by defendant-appellant Carl A. Buckner from his conviction by a jury of three counts of aggravated robbery. (K.S.A. 21-3427.) Appellant was sentenced, under the Habitual Criminal Act, to three consecutive terms of thirty years to life.

Due to the number and nature of the points on appeal, a rather detailed statement of the facts is deemed necessary.

On September 17, 1975, the Maverick Club, a private class B club located in Lyon County, Kansas, and two of its patrons, Lewis Baker and Charles Stroud, were robbed by two men. Kathy Gibson and Sheryl York were also present in the club and testified at the trial. The victims and witnesses testified one of the robbers was a tall black man, the other a white man who carried a shotgun, and both wore hats, mesh hose and bandannas over their faces. After the robbery, a small four-cylinder car was seen leaving the Maverick Club.

Later the same day, in a field near the edge of a road five miles southeast of Emporia, the following items were found: three checks taken in the robbery, rolls of coins, two pairs of nylon stockings, two handkerchiefs, a man's navy blue utility cap with the initials "B.D.C." toward the rear of the cap, a Levi cap, a brown paper bag, a black silk or nylon-type tee shirt, a pair of blue jeans and a purple tee shirt.

On September 19, 1975, the appellant, while he was a passenger in a car driven by Bobby D. Coe, was stopped by J. Vernon Humphrey, an agent of the Kansas Bureau of Investigation. The car was ostensibly stopped for a traffic violation although no citation was issued to the driver, Coe. Both men were asked to go to the Emporia Police Department, which they did, and the appellant was interviewed as to his identification. He told officers

that his name was Carl Phillips but was unable to produce any identification.

Appellant was interviewed by K.B.I. Agent Humphrey. Humphrey stated he was investigating the armed robbery at the Maverick Club and that appellant and Coe fit the description of the two people who had committed the robbery. Appellant was read the *Miranda* rights and then questioned as to his whereabouts the night of the robbery. During this questioning a sample of appellant's hair was obtained. The evidence is conflicting as to whether appellant consented to the taking of hair samples by Agent Humphrey. After questioning by the police, appellant and Coe left the police station. Agent Humphrey delivered the hair samples taken from appellant plus all the items found along the side of the field, except the checks, to the Kansas Bureau of Investigation for analysis by Ken Knight, a forensic chemist.

On September 21, 1975, Agent Humphrey received a telephone call from Ness County authorities to the effect that a local parolee, Steve Dimitt, and his wife, Virginia, might have information about the robbery of the Maverick Club. Agent Humphrey and Lyon County Sheriff Daniel Andrews drove to Ness City to interview the Dimitts. During the interview Agent Humphrey was told that the appellant, Bobby D. Coe, and two women had come to the Dimitt's house in Ness County and that Coe had indicated to the Dimitts that they were implicated in the robbery.

After interviewing the Dimitts, Humphrey called Ken Knight at the K.B.I. laboratory and received an oral report that a great number of similarities existed between the hair found on some of the items recovered by the law enforcement officers and the hair from the head of the appellant.

On September 22, 1975, Humphrey and other law enforcement officers arrested appellant and Bobby D. Coe at the Dimitt residence. After the arrest Coe and Buckner were advised of their rights and transported back to Emporia.

Once back in Emporia appellant was again advised of his rights and questioned by Agent Humphrey about the robbery. During this interview appellant allegedly made certain incriminating statements relative to what had happened to the shotgun used in the robbery and other items connected with the robbery.

Additional facts will be set forth in connection with the various points on appeal.

As his points on appeal, appellant sets forth the following:

1. The court erred in overruling defendant's motion, pursuant to K.S.A. 22-3215, to suppress as evidence any and all statements given by defendant and obtained incident to his illegal arrest.

2. The court erred in overruling defendant's motion, pursuant to K.S.A. 22-3216, to suppress as evidence certain hair samples.

3. The court erred in failing to require the state to prove by clear and positive evidence that consent was given by defendant to the taking of a hair sample.

4. The court erred in permitting Steven Dimitt and Virginia Dimitt to testify as to statements made to them by Bobby D. Coe in that such testimony was hearsay and deprived the defendant of his constitutional right of confrontation; and that said testimony substantially prejudiced the rights of defendant.

5. It was improper to permit the state in its closing argument to state or imply that the presumption of innocence is unfair.

6. The court erred in allowing evidence to be presented indicating the guilt of Bobby D. Coe and that said evidence substantially prejudiced the rights of defendant.

7. The court abused its discretion in imposing sentence.

As to the first point it is the appellant's position that the court erred in overruling his motion to suppress as evidence any and all statements given by appellant on the grounds that they were obtained as a result of an illegal arrest. Appellant argues that as no warrant had been issued for his arrest, Agent Humphrey did not have probable cause for the arrest on September 22, 1975, at the Dimitt home in Ness County. K.S.A. 22-2401(c)(1) provides that a law enforcement officer may arrest a person without a warrant when he has probable cause to believe that the person has committed a felony.

Probable cause for an arrest is an evasive concept and its existence must be measured by the facts and circumstances of each particular case. (*State v. Curtis,* 217 Kan. 717, 538 P.2d 1383 [1975].) The United States Supreme Court has stated that " '[t]he substance of all definitions' of probable cause 'is a reasonable ground for belief of guilt.' " (*Brinegar v. United States,* 338 U.S. 160, 175, 93 L.Ed. 1879, 69 S.Ct. 1302 [1949].)

In defining the term the Kansas Court has said:

"Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they have reasonably trustworthy information

are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (*State v. Lamb,* 209 Kan. 453, 467, 497 P.2d 275 [1972]; *State v. Morin,* 217 Kan. 646, 538 P.2d 684 [1975].)

"Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." (*State v. Evans,* 219 Kan. 515, 521, 548 P.2d 772 [1976].)

"It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that evidence leads the officer to believe that guilt is more than mere possibility." (*State v. Barnes,* 220 Kan. 25, 28, 551 P.2d 815 [1976] and authorities cited therein.)

Appellant argues that the only facts the arresting officer had, other than the statements made by Steven and Virginia Dimitt, were that appellant lived with Bobby D. Coe, and that appellant and Coe fit the general description of the alleged perpetrators of the robbery. This is not a complete statement of the facts and circumstances giving rise to appellant's arrest.

Appellee lists ten bits of information which Agent Humphrey had at the time of the arrest which entered into his determination that there was probable cause to arrest the defendant:

"(1) that during the early morning hours of September 17, 1975, a tall black man and white man had committed an armed robbery in Emporia at the Maverick Club; (2) that at the time of the robbery the appellant [a black man] and Bobby D. Coe (a white man) were in Emporia, Kansas; (3) that on September 19, 1975, the appellant and Bobby D. Coe were in a small, 4-cylinder car and a small, 4-cylinder car had been observed leaving the scene of the robbery; (4) that the appellant was using the name of Carl Phillips and could not produce identification as to his name when he was stopped by Agent Humphrey on September 19, 1975; (5) that the appellant and Bobby D. Coe fit the general description of the robbers; (6) that on September 17, 1975, items seized during the robbery and articles of clothing used by the robbers were found five miles from Emporia, that a hat found among the items contained the initials "B.D.C." in its headband; (7) that a preliminary report from the K.B.I. lab indicated that the hair samples found on the robber's clothing matched the hair samples taken from the head of the appellant; (8) that two individuals had told Agent Humphrey that the appellant and Bobby D. Coe had related to them that they had committed the robbery; (9) that the appellant and Bobby D. Coe had stated to these two individuals that they were on their way to California; and (10) the Emporia Police Department had a prior contact with the appellant."

The record appears to substantiate these facts. It is not necessary that all of these facts be within the personal knowledge of the arresting officer.

"Collective information of police officers and law enforcement officers involved in an arrest can form the basis for probable cause, even though the information is

not within the knowledge of the arresting officer. . . ." (*State v. Clark,* 218 Kan. 726, Syl. 2, 544 P.2d 1372 [1976].)

While perhaps none of these facts taken alone would constitute probable cause, taken together they should be sufficient. We hold that the arrest of appellant was based on probable cause as defined by our statutes, that the arrest of appellant was not illegal and that the admission of appellant's statements, made after adequate warning, was not error.

Appellant's second point on appeal is that the trial court erred in overruling his motion to suppress as evidence the hair samples taken from appellant at the time he was interviewed at the Emporia police station on September 19, 1975. His argument is that his detention at the police station constituted an illegal arrest and that as a result the hair samples were illegally obtained.

Appellant, in his third point, argues that the taking of the hair samples constituted an illegal search without his consent, although the court apparently ruled that the taking of hair was not a search.

While there is conflicting evidence whether appellant was detained at the police station against his will, there is no affirmative showing that he was ever under arrest. Agent Humphrey and Detective Eslinger testified that he was never placed under arrest and was free to go at any time, while the appellant testified he was told he could not leave. No formal charges were lodged against appellant and he ultimately left the police station.

Appellant further argues that the taking of the hair was illegal as he had not given his voluntary consent to the officers doing so. Assuming arguendo that the taking of the hair did constitute a search not conducted incident to a lawful arrest, the burden is on the state to prove that the defendant voluntarily consented to the search. The trial court found the state had met this burden and that defendant's voluntary consent had been established by a preponderance of the evidence.

Appellant urges this court to adopt the rule of clear and positive evidence that consent was voluntarily given rather than the rule of a preponderance of the evidence. The preponderance test has been the rule in Kansas in determining the voluntary nature of a confession and it appears no greater test should apply to a determination of whether the consent to a search is voluntary. (See *State v. Stephenson,* 217 Kan. 169, 535 P.2d 940, and *Lego v.*

*Twomey,* 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619, for the test as to evidence necessary to establish the voluntariness of a confession.)

There is evidence to uphold the trial court's finding that consent was freely given. The existence and voluntariness of a consent to search and seizure is a question of fact to be decided in light of attendant circumstances by the trial court and will not be overturned on appeal unless clearly erroneous. (*State v. Jakeway,* 221 Kan. 142, 146, 558 P.2d 113, and authorities cited therein.)

Appellant's next point is that the court erred in permitting Steven Dimitt and Virginia Dimitt to testify concerning statements made to them by Bobby D. Coe in that such testimony was hearsay and deprived the defendant of his constitutional right of confrontation and substantially prejudiced his rights.

The trial court allowed Steven Dimitt and Virginia Dimitt to testify as to the conversation they had with Bobby D. Coe at their house in Ness County on the 21st of September, 1975. Timely objections were made to the testimony of each of the Dimitts.

The appellant, Bobby D. Coe and two girl friends arrived at the Dimitt's house about 4:00 a.m. and Coe asked if they could have a place to stay. Dimitt indicated they could.

Mrs. Dimitt testified that Coe said they might be hot or that they were hot; that Bob (Coe) was talking about robbing a Maverick Club; that Bob said something about having a shotgun and that he left the money with somebody in Emporia to hold for him. On cross-examination she testified Coe never referred to Buckner by name and that Buckner said nothing about the Maverick Club.

Mr. Dimitt testified that Coe stated they might be hot; there had been an armed robbery in Emporia and they fit the description; that there was a double barreled shotgun that he had and they went in and tripped over a bannister or something, got the money and left. Again, on cross-examination, it was established that Coe never referred to Buckner by name when relating these events.

It was also established that the appellant was present when the conversation took place but said nothing to refute or deny the statements.

The testimony of the Dimitts was admitted by the trial court as an exception to the hearsay rule under K.S.A. 60-460(*h*)(2). This exception to the general rule of hearsay provides:

*"(h) Authorized and adoptive admissions.* As against a party, a statement . . . (2) of which the party with knowledge of the content thereof has, by words or other conduct, manifested his or her adoption or belief in its truth."

By this exception to the hearsay rule, an incriminating statement of a third person, which an accused has admitted to be true, is admissible in evidence against the accused as his own statement by adoption. When this statutory section is involved "no issue arises under the confrontation clause where it is the accused's adoptive statement which is being used against him rather than a statement dependent upon the credit of some third person not in court." (*State v. Greer,* 202 Kan. 212, 214-215, 447 P.2d 837.)

In this case, appellant did not expressly adopt the statements of Coe; however, it has long been the rule that statements to the prejudice of an accused, made in his presence and which he tolerates without resentment, explanation or denial, may be admissible as some evidence of his consciousness of guilt. (*State v. Cruse,* 112 Kan. 486, 494, 212 Pac. 81 [1923]; *State v. Shaw,* 195 Kan. 677, 681, 408 P.2d 650 [1965].) While the mere fact that a statement is made in the presence of the defendant, to which he voices no objection, does not render it admissible, per se, the trial court specifically found that in the present case the evidence was admissible. In view of the overall evidence in this case, including statements of the appellant after his arrest relating to the shotgun and other items connected with the robbery, we cannot say that there was prejudicial error in the admission of the testimony of the Dimitts.

Appellant next contends that it was improper to permit the state in its closing argument to imply that the presumption of innocence is unfair and that the court erred in allowing evidence to be presented indicating the guilt of Bobby D. Coe.

We have carefully considered both points and find them to be without merit.

Appellant's final point on appeal is that the court abused its discretion in imposing sentence. Appellant had one prior felony conviction arising from a plea of guilty to burglary on July 31, 1974, in an action in the District Court of Sedgwick County, Kansas. In that action appellant was granted probation after serving approximately five months of his sentence.

In the instant case, the trial court, on motion of the state,

invoked the Habitual Criminal Act, K.S.A. 21-4504. Appellant, having been convicted of three counts of aggravated robbery, was sentenced to the maximum of thirty years to life on each count, all to run consecutively, or ninety years to life.

It should be pointed out that this court has had the benefit of a verbatim transcript of the sentencing hearings, the presentence report dated May 26, 1976, and the report and findings of the Kansas State Reception and Diagnostic Center.

The convictions in this action all grew out of one incident at the Maverick Club near Emporia. As a matter of speculation, if there were nine patrons in the club, instead of two, the appellant possibly would have received ten sentences of thirty years to life, to run consecutively, or three hundred years to life.

K.S.A. 21-4601 establishes the basic tenets and objectives of the sentencing procedure:

"**Construction.** This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

The trial court is under an obligation to consider certain factors in imposing sentence on a criminal defendant. K.S.A. 21-4606 enumerates certain factors that shall be considered by the trial court in fixing the minimum term of imprisonment. They are:

"(a)  The defendant's history of prior criminal activity;

(b)  The extent of the harm caused by the defendant's criminal conduct;

(c)  Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

(d)  The degree of the defendant's provocation;

(e)  Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

(f)  Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

(g)  Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

Appellant was found guilty on April 2, 1976, and sentencing was set for April 28, 1976, at which time the presentence investigation report had not been received. Counsel for appellant was allowed to present testimony on behalf of his client and the hearing was then continued until the presentence investigation report was received.

Evidence presented on behalf of appellant at the initial hearing on April 28th included the testimony of three members of the Emporia Police Department.

Louis Hansen testified he is in charge of the jail; he is acquainted with defendant Buckner; in his opinion Buckner was a cooperative prisoner who was close to ideal; an aggressive worker; a leader of the other prisoners; and a positive influence on the other prisoners.

William D. Lewis testified he had daily contact with defendant over a period of six months; defendant had been very cooperative, helpful, helped maintain order and discipline in the jail; was close to ideal as a prisoner; and if all prisoners were like defendant, his (Lewis') job would be much easier.

Robert William Logan, sergeant, testified defendant was very cooperative; gave no difficulty at all; had the respect of the other prisoners; assisted in keeping discipline in the jail; was intelligent; above average in intuitive ability; cooperative; and basically a friendly individual.

The presentence report revealed that defendant is a twenty-five-year-old black male and reviewed the defendant's prior record, educational background, military experience, employment, social history and other items. The report indicates the defendant grew up in the ghetto of Chicago, completed high school and attended college on a basketball athletic scholarship. Defendant served in the army nearly five years (twenty-two months in Viet Nam) and received a medical discharge under honorable conditions. The recommendation of the presentence investigator was:

"In view of Mr. Buckner's prior record and considering the seriousness of the present offenses, I see no reason why Mr. Buckner should not be expected to spend *some time* behind bars. I leave the exact amount of time to the discretion of the Court." (Emphasis added.)

The overall report was favorable to the appellant.

The report of the Reception and Diagnostic Center included a

medical summary which indicated appellant is "considered to be an essentially healthy male." The psychiatric evaluation was conducted by the clinical director at the Center and a social worker. The report is generally favorable to the defendant.

The conclusions reached as a result of the evaluation process were:

"IV. *Recapitulation of the Evaluation Process:* We deal here with a 25 year old, single black male with a college education, a musician with artistic endowment with intelligence allowing college studies who has been convicted of a crime of aggravated robbery on three counts and faces a life sentence.

"The psychiatric examination did not reveal any changes compared with the examination done in depth in 1974. This man is not suffering from any kind of mental illness or disorder which calls for any kind of psychiatric treatment. He appears, however, to be overwhelmed by the personal tragedy as he perceives it. For the time being he is mobolizing all of his intellectual capabilities to appeal and win freedom. If this does not work out, we will expect some more severe reaction in the form of a depression. In a safe situation like when discussing his case with some professionals he had the courage and also the capabilities to express his deeper feelings. His feelings are characterized by a heavy tint of feelings of unfairness—feelings that the whole crime was one big misunderstanding based only on the assumption that there was a white and a black together. He is obsessed with what was going on during the court proceedings. At the time of the examination he could give an account of almost every minute what happened to him since the moment of the arrest.

"How long this man has a hope that his appeal might work and he is working on the appeal he will maintain a good equalibrium emotionally and intellectually. If, however, something does not work and he is faced with this life sentence then an understandable severe reaction is expected. While serving in prison or in his concept, while awaiting the appeal he probably will get engaged in more research in legal matters and maybe some college studies. If given the opportunity he will probably like to continue with his music.

"The way of how he was perceived by the clinical staff during his re-examination we do not expect that this man will cause any kind of problems while incarcerated. He requested on his own not to go to the Kansas State Industrial Reformatory but to be transferred to the Kansas State Penitentiary."

At the sentencing hearing on May 27, 1976, counsel for the defendant did not ask for probation but pleaded with the court not to invoke the enhancement of sentence under K.S.A. 21-4504. Counsel's able plea to the court is too lengthy to set forth herein but it adequately placed the alternatives, faced by the court in sentencing the defendant, in perspective. Following counsel's statement, the defendant was sentenced as follows:

"THE COURT: Motion pursuant to K.S.A. 21-3504 (1) (*sic*) is sustained and granted. Please stand, Mr. Buckner. The Court has given considerable thought to

this matter for quite some time, and the conclusion I have arrived at has not been done lightly. Accordingly (*sic*) to the papers I have before me, on December the 19th, of 1974, you were granted probation under the District Court of Sedgwick County, Kansas; and less than a year later you were charged with three crimes of aggravated robbery. This Court is of the opinion every person has rights.

"MR. HELBERT: Your Honor, would it be possible to speak up because neither one of us can hear you?

"THE COURT: Yes. This Court is of the opinion that everyone has rights. My attention has been directed to the testimony of three persons. I am aware of the testimony of a good number of more people than that. It occurs to me that if rehabilitation had been a realistic thought, it should have occurred the first time. Your chance has run out.

"As I say, I've spent some considerable time. I have considered the instructions of the statutes, their intent and their purpose. I think there is no one who isn't aware of the fact that as a general policy, if it's a non-violent crime, probation is very seriously considered for a first offender by this Court. It's most unusual when it's considered for a second non-violent crime. What we have is a combination of both. It's unfortunate. It's a serious loss, and it's a waste. It is, however, a matter of your choice.

"Upon the finding of the jury rendered April 2nd, of 1976, finding you guilty of a violation of K.S.A. 21-3427, in Count I, I sentence you to a period of not less than thirty years nor more than life in the custody of the Secretary of Corrections. For the same offense in Count II, a period of thirty years to life in the custody of the Secretary of Corrections. For the same offense alleged in Count III, a period of thirty years to life in the custody of the Secretary of Corrections.

"It is this Court's opinion, when legislature determined that this was a Class "B", therefore the second most heinous crime that could be committed, they were in point of fact giving instructions to every conscientious Court to bear in mind just exactly that. The people that choose to use the streets here have rights. It's the intention of this Court that they shall be protected. These sentences shall run consecutively. You are remanded to the custody of the Sheriff of Lyon County, Kansas, for the purpose of transportation to K.R.D.C. I assume that they have a prior rundown. Unfortunately, after two months waiting, I don't have it. I don't know where it's at.

"I will advise you, Mr. Buckner, that you have a right of appeal; and that upon the completion of your sentence, you will have the right to have your record expunged. The date for computation of your sentence is 10/29/75.

"MR. HELBERT: Your Honor, we would ask that the computation begin from the time of incarceration of 9—September 19, 1975.

"THE COURT: The date for computation of sentence will be 10/29/75. The statute, Mr. Helbert, states that the Judge shall select it. I did so. Is there anything further?

"MR. HELBERT: Your Honor, would it be possible for you to set an appeal bond at this time?

"THE COURT: I will not set a bond on this less than $75,000.00."

We have gone to unusual lengths to set forth the record surrounding the sentencing in this case.

We are not unmindful of the longstanding rule in Kansas, as held repeatedly by this court, that a sentence which lies within the statutory limits as set forth by the legislature will not be disturbed on appeal in the absence of special circumstances showing an abuse of discretion. (*State v. Steward,* 219 Kan. 256, 547 P.2d 773.) We adhere to that rule and do not intend to overrule the numerous previous decisions which have so held.

However, as with all things, there is a limit and under the circumstances in this case, we are of the opinion the action of the trial court was so arbitrary and unreasonable and constituted such an abuse of discretion that the sentence cannot be allowed to stand.

"The discretion lodged within a court is not a boundless, but a judicial, discretion. It is a discretion limited to sound judgment to be exercised, not arbitrarily, but with regard to what is right and equitable under the circumstances and the law." (*State v. Collins,* 195 Kan. 695, 700, 408 P.2d 639.)

This court, as well as others throughout the country, has become increasingly concerned with the disparity of sentences imposed by the various trial courts for comparable offenses. (See Note, *Authority and Scope of Appellate Review of Criminal Sentences Within the Statutorily Prescribed Maximum,* 22 Kan. Law Rev. 606; Blake, *Appellate Review of Criminal Sentencing in the Federal Courts,* 24 Kan. Law Rev. 279; *ABA Standards Relating to Appellate Review of Sentences* [Approved Draft, 1968].) This disparity exists not only among various states, but also judicial districts within the state and even among various judges within the same district. One of the recommended standards of the American Bar Association is:

"2.3(c) The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally this should be done for the record  .  .  ."

The problem of the sentencing procedure and appellate review of sentences is thoroughly explored in a well reasoned opinion of the Supreme Court of Pennsylvania recently handed down in *Commonwealth v. Riggins,* ____Pa.____, 377 A.2d 140 (Aug. 1977). At page 147 the Court states:

"The benefits of requiring the trial court to state its reasons for the imposition of its sentence are manifold: First, requiring the trial court to articulate its reasons for selecting a sentence will promote more thoughtful consideration of relevant factors and will help rationalize the sentencing process. It will safeguard against

arbitrary decisions and prevent consideration of improper and irrelevant factors. It will minimize the risk of reliance upon inaccurate information contained in the presentence report. A statement of reasons may aid correction authorities if the sentence results in a commitment, and may have therapeutic value if the sentencing judge explains his or her reasons to the defendant. Requiring a trial court to provide a reasoned basis for the sentence imposed may enhance the court's legitimacy as perceived by judges themselves and participants in the criminal justice system. It will aid courts in attaining their institutional objective of dispensing equal and impartial justice and will demonstrate to society that these goals are being met. Reasoned sentencing decisions may encourage the development of sentencing criteria and reduce disparity in sentences—decreasing the number of unusually lenient as well as unusually harsh sentences. Finally, a statement of reasons will be invaluable in aiding appellate courts to ascertain whether the sentence imposed was based upon accurate, sufficient and proper information."

The legislature has dictated, in K.S.A. 21-4606, certain minimum factors to be considered in imposing sentence. Although the statute may not require it, we feel that when the sentence exceeds the minimum, it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the trial court has abused its discretion. "Absent a statement of reasons, the record will not reveal whether the legislatively mandated factors have been considered." *Commonwealth v. Riggins,* supra, 151.

The judgment of conviction is affirmed. However, based upon the facts and circumstances in this particular case, the sentence is vacated and the case remanded with directions that the defendant be resentenced, in compliance with the provisions of K.S.A. 21-4601 and K.S.A. 21-4606. It is further ordered that such resentencing shall be by a different judge to be appointed by the departmental justice of the fifth judicial department.

McFARLAND, J., dissenting in part and concurring in part: I concur with that portion of the majority opinion that affirms the conviction. I dissent from that portion that sets aside the sentences and remands the case for resentencing under a different judge. It is agreed that the sentences do not exceed the permissible statutory limits. The defendant was convicted of three counts of aggravated robbery. The majority opinion would seem to imply that it was arbitrary to impose consecutive sentences because the robberies were all at the same establishment and

closely related in time. This one-incident theory, carried to its logical conclusion, would mean anyone robbing a business crowded with customers might as well rob everyone present as no additional penalty should be imposed for the additional crime. This same theory could mean aggravated robbery, aggravated kidnapping, aggravated battery, and rape arising out of one incident should have the sentences run concurrently unless the judge can state on the record enough reasons to satisfy this court. The sentences will be reviewed by individuals who never saw the defendant or the victim. The legislature has set the permissible limits of sentencing and left the actual sentence imposed to the discretion of the trial judge. Factors to be considered have been set forth by the legislature. This majority decision takes away some of the discretion of the trial court and gives it to the appellate courts. This is against the best interest of the public.

Jurors are instructed to decide each crime charged separately, uninfluenced by their decision as to any other crime charged. The majority opinion is telling the sentencing judge just the opposite. Basically he is told to consider all crimes arising from the same incident as one crime unless he can justify more than the minimum or consecutive sentences. This will encourage prosecutors to file separate informations whenever possible and judges to sever charges for trial in major cases.

I, further, do not see any justification for remanding the case to a different judge for sentencing.