No. 52,162

STATE OF KANSAS, *Appellee,* v. RONNIE G. WHITEHEAD, *Appellant.*

(622 P.2d 665)

Opinion filed January 17, 1981.

*Leonard F. Watkins, Jr.,* of Wichita, argued the cause and was on the brief for the appellant.

*Ronald D. DeMoss,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Douglas R. Roth,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from convictions on two counts of possession of heroin (K.S.A. 1979 Supp. 65-4127a). Convictions obtained in the first trial were reversed in *State v. Whitehead,* 226 Kan. 719, 602 P.2d 1263 (1979), and a new trial directed. The criminal charges followed the search of two resi-

dences in Wichita by police officers, acting under the authority of two separate search warrants.

Count two of the information charged possession of heroin seized in a search at 1709 Looman, Wichita, on December 29, 1977. Wichita police officers entered that residence looking specifically for heroin. They found defendant, Ronnie G. Whitehead, in the master bedroom in his pajamas. Also present in the residence were Diane Presley and a young child. In the master bedroom, the police found two balloons of heroin under some women's clothing in a dresser drawer, a torn balloon on the floor of the bedroom closet, and a partial balloon in a brown paper sack near the closet. The State presented evidence that the defendant lived at the Looman address. At the time of the raid, the police discovered in the closet men's clothing belonging to defendant Whitehead and a utility bill addressed to Ronnie G. Whiteman, 1709 Looman, Wichita. Following the raid, the defendant and Presley were both arrested for possession of heroin.

Count one of the information also charged possession of heroin and was the result of a search conducted by Wichita police officers under authority of a search warrant for the residence at 2422 East 20th Street, Wichita, on January 21, 1978. When the police knocked on the door of the residence and announced themselves, they heard running inside. They forced open the door and observed Marshall Bottoms run to the bathroom where they heard the toilet flush. Whitehead and Otis Goodwin ran into a bedroom and sat on the bed. Between them on the bed, the police found a gold compact containing eight balloons of heroin. Defendant, Bottoms, and Goodwin were all arrested for possession of heroin.

On this appeal, the first claim of error is the district court's denial of defendant's motion to suppress, as evidence, the heroin seized in the search of the Looman residence under count two. The motion to suppress was not filed by defendant until after the case was reversed on the first appeal. It appears that, at the time of the hearing on the motion to suppress, the affidavit supporting the search warrant issued for the search of the Looman residence had been misplaced in the court file and had not been made available to defense counsel. However, at that time the affidavit supporting the search warrant for the residence at East 20th Street was available. The defendant's motion to suppress was filed pursuant to K.S.A. 22-3216, which provides in part as follows:

"22-3216. Motion to suppress illegally seized evidence. (1) Prior to the trial a defendant aggrieved by an unlawful search and seizure may move for the return of property and to suppress as evidence anything so obtained.

"(2) *The motion shall* be in writing and *state facts showing wherein the search and seizure were unlawful.* The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were lawful shall be on the prosecution. (Emphasis supplied.)

It should be noted that defendant's motion to suppress, although in writing, did not state facts showing wherein the search and seizure were unlawful as required by section (2). The motion stated only the legal conclusion that the "seizures were the result of an illegal search of these premises and in violation of defendant's constitutional rights." At the hearing on the motion, defendant's only objection to the search was the absence of a written affidavit for a search warrant authorizing search of the Looman residence. The trial court refused to rule on the merits of the motion or the sufficiency of the allegations of the motion. It denied the motion on the ground that the defendant lacked any standing to challenge the validity of the search, because, in his testimony at the first trial, defendant had denied any interest in the premises where the heroin was discovered. Both in the trial court and again on the appeal, the defendant claimed that he had "automatic standing" to challenge the legality of the search under *Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725 (1960), on the basis that the evidence seized in the search when the defendant was present on the premises was the basis for the criminal charge of possession of heroin.

*Jones* involved a factual situation similar to the case at bar. The petitioner was arrested in an apartment belonging to a friend when the police entered with a search warrant and found drugs and paraphernalia in the apartment. Before trial, the petitioner moved to suppress the evidence, contending that it had been illegally seized. The evidence showed that Jones had a key to his friend's apartment, that he could come and go as he pleased, that he kept some clothing there, and that he had spent the night there before. The motion was denied on the ground that Jones lacked a possessory interest in the apartment and, therefore, lacked standing to challenge the validity of the search. The Supreme Court in *Jones* acknowledged that a criminal defendant in such a situation faced a dilemma:

"Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed sufficient, to convict him." 362 U.S. at 261-62.

The court in *Jones* held that under the circumstances the defendant had "automatic standing" to challenge the validity of the search.

The "automatic standing" rule established in *Jones* has been rejected in later decisions of the United States Supreme Court. In *Rakas v. Illinois,* 439 U.S. 128, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978), *rehearing denied* 439 U.S. 1122 (1979), the court found the standing conferred in *Jones* because the defendant was "legitimately on the premises" to be too broad. The court stated that the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." p. 143. (Emphasis supplied.)

In *United States v. Salvucci,* 448 U.S. 83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980), the court specifically rejected the "automatic standing" rule of *Jones.* As noted above, the rule of *Jones* conferred "automatic standing" when the element of possession was also an element of the criminal charge. The court in *Salvucci* approved *Rakas,* stating that an illegal search can only violate the rights of those who have a "legitimate expectation of privacy in the invaded place." The basic test to determine whether or not a person present on the premises at the time of a search has standing to challenge the validity of the search is not whether that person "had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." 448 U.S. at 93.

This court has also recognized that the Fourth Amendment right to protection from unreasonable searches is based upon the individual's right of privacy (*State v. Chiles,* 226 Kan. 140, 146, 595 P.2d 1130 [1979]), and that one does not have standing to challenge a search where there is no expectation of freedom from intrusion (*State v. Gordon,* 221 Kan. 253, 258, 559 P.2d 312 [1977]).

In the case now before us, testimony at the first trial presented by the State showed that the defendant was in the apartment

dressed in pajamas when the police entered. Evidence was offered that the clothing found in the closet belonged to the defendant and that he lived there with Ms. Presley on an irregular basis. Under these circumstances, it is clear that the defendant had standing to challenge the legality of the search under the Fourth Amendment, and that the trial court erred in holding that the defendant did not have standing to challenge the validity of the search. Under the factual circumstances, the defendant had a legitimate expectation of privacy in the area searched which gave him standing to raise the issue, even though defendant, at the first trial, denied having an interest in the premises.

Under the circumstances shown in the record before us, however, we have concluded that this court on this appeal may properly determine the legality of the search warrant issued to search the Looman Street property and more specifically the sufficiency of the allegations of the underlying affidavit. See *Jones v. United States*, 362 U.S. at 271. As noted above, the defendant, in his motion to suppress, did not comply with the provisions of K.S.A. 22-3216(2) which require a motion to suppress to be in writing and to state facts showing wherein the search and seizure were unlawful. Also, as noted above, the only objection to the search made of the Looman residence was the absence of a written affidavit to serve as a basis for the search warrant. The affidavit for that search was later found in the court files and has been made a part of the record on appeal at the request of the defendant. At no place in his brief, nor on oral argument, has defendant stated why the affidavit is not sufficient to support the search warrant. The affidavit for the search warrant of the Looman residence, included in the record, is verified by Charles E. Herbel, a detective with the Wichita police department assigned to the undercover investigation of narcotics traffic in the Wichita area. In the affidavit, Detective Herbel states in part as follows:

"Your affiant has received information from a confidential and reliable informant who was inside the above described residence and which information stated that the informant saw heroin inside the above described residence.

"The circumstances surrounding the informants observing this heroin were as follows: Your affiant searched the informant and found him to be free of contraband or controlled substances. Your affiant followed the informant to the above described address and saw him enter it. Your affiant kept the above described address under constant observation and saw the informant leave. Your affiant then met with the informant and received from him a quantity of what the Wichita Police Department Laboratory tested and found to be heroin. The Informant

stated that he had received this heroin from the occupant of the above described residence and further stated that he saw additional heroin inside the residence. Your affiant observed that the only place the informant could have received the heroin was from the above described address.

"In addition your affiant believes the informant to be reliable because he has given information on three occasions in the past. This information has lead to the issuances of search warrants on all three occasions; heroin was recovered in the search warrants and persons have been charged, the cases are still pending in the District Court.

"All of the above happenings have occurred in the last seventy-two hours."

The matters contained in the affidavit clearly establish probable cause for the search of the Looman Street residence made on December 29, 1977. In *State v. Jacques,* 225 Kan. 38, 587 P.2d 861 (1978), it was held that there is a presumption of validity with respect to an affidavit supporting a search warrant and generally a party against whom a search warrant is directed may not dispute the matters alleged in the supporting affidavit or application. An exception to this general rule is recognized if the challenger's attack is supported by allegations and an offer of proof under oath that the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth. In the present case, the defendant has not supported his constitutional attack on the affidavit by allegations and an offer of proof under oath as required by our decision in *Jacques.* Under the circumstances, we have no hesitancy in approving the sufficiency of the affidavit for the search warrant directed against the Looman residence. Although the trial court erred in holding that the defendant did not have standing to attack the legality of the search of the Looman residence, we have concluded that the ruling of the district court did not prejudice the defendant, since the defendant has asserted no valid basis for attacking the legality of the search. Hence, the motion to suppress was properly denied.

The defendant's next point on the appeal is that the district court committed reversible error in refusing to require disclosure of the name of the informant mentioned in the affidavit supporting the search warrant for 2422 East 20th Street in Wichita which produced the heroin referred to in Count I of the information. That affidavit was quite similar to the affidavit for the search warrant directed to the Looman property. In substance, the affiant, a police officer assigned to the narcotics unit, stated in the affidavit that he searched the informant and the automobile which the informant was using and found them to be free of any narcotic

substances. The informant was immediately followed to the residence property at 2422 East 20th Street where the informant entered the residence. After the informant left the residence, he met with the affiant and gave him a quantity of a substance which was found on testing to be heroin. Affiant stated that the only place the informant could have received the controlled substance was in the described residence. The affidavit also included statements as to the reliability of the informant.

The defendant contends in substance that he needed the name of the informant as a witness, anticipating that the informant's testimony would reflect that the drugs found by the police were present in the residence when the informant left and before defendant arrived. Defendant contends that this testimony was needed to rebut any inference that the defendant brought the heroin into the residence at 2422 East 20th just before the search.

K.S.A. 60-436 allows the identity of an informant to remain privileged and free from disclosure, unless the court finds either (1) that the identity of the informant has already been disclosed, or (2) that the identity is "essential to assure a fair determination of the issues." The purpose of the privilege is to "encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure." *State v. Nirschl,* 208 Kan. 111, 115, 490 P.2d 917 (1971). Under our cases, the decision to require or to refuse to require disclosure of the informant's identity lies within the broad discretion of the trial court, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *State v. Deffenbaugh,* 216 Kan. 593, 600, 533 P.2d 1328 (1975). The defendant has the burden of persuading the trial court that the informant's identity is essential to his defense and to a fair trial. *State v. Braun,* 209 Kan. 181, 186, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972).

In the present case, there is no showing of informant's participation in the crime in which the accused is charged. There was no mention at the trial that the informant provided information which served as a basis for the search warrant. The State simply proceeded on the theory that the police entered the residence during a sale of heroin among the parties present in the house. The testimony of the police officers executing the warrant showed that when the police officers opened the door, Bottoms was seen running into the bathroom, and the police heard the toilet flush,

inferring that some drugs had been disposed of. When searched, Bottoms had over $300 on his person. While Bottoms was running into the bathroom, defendant and Goodwin were seen running into the bedroom. Defendant and Goodwin were found there casually lying on the bed. Between the two of them was a gold compact which contained eight balloons of heroin.

Balancing the public interest in nondisclosure of the identity of the informant with defendant's right to a fair trial and to present exculpatory evidence, we cannot say that the trial court erred in denying defendant's motion to disclose the name of the informant. The State's case did not indicate that the defendant was the seller or that he had brought the heroin into the house. The State simply presented evidence that the three occupants were engaged in a sale of narcotics and left it for the jury to determine whether the defendant was a participant. We hold that the trial court did not abuse its judicial discretion in refusing to require the State to disclose the name of the informant.

The defendant's third point is that the trial court erred in allowing the State to introduce into evidence a gas bill from the Gas Service Company addressed to Ronnie "Whiteman" at 1709 Looman, the scene of the first search. The defendant claims, in substance, that the bill had nothing to do with the defendant, and was erroneously admitted to show that defendant lived at that address. We believe that the gas bill, despite the misspelling of defendant's name, was relevant in tending to prove that the defendant was a resident of the house at 1709 Looman. The weight to be given the evidence, in light of the misspelling of defendant's name, was for the trier of facts. We find no error in the admission of the gas bill into evidence.

The defendant next contends that the trial court erred in denying defendant's motions for acquittal and for a new trial because the evidence presented was insufficient to support the verdicts of guilty. In *State v. Bullocks,* 2 Kan. App. 2d 48, 50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978), the Court of Appeals listed the factors to be considered in linking a defendant to the knowing possession of narcotics found on premises to which defendant did not have exclusive control. The factors listed included (1) any incriminating statements made by defendant, (2) suspicious behavior, and (3) proximity of defendant's possession to the drugs. See also *State v. Goodwin,* 4 Kan. App. 2d 81, 603 P.2d 194

(1979), *rev. denied* 227 Kan. 928 (1980). Applying these factors to the evidence in this case, we hold that there was sufficient evidence for a jury to conclude that the defendant had knowing possession of the heroin as alleged in each count. As to the possession of heroin at the Looman residence, defendant admitted to the police that the clothing there belonged to him, that he lived there part of the time, and that, if the police found any heroin at that address, he would take responsibility for it. As to the possession of narcotics at the 20th Street address, the evidence showed that the defendant and the occupants were acting suspiciously when the police entered, and defendant was found in close proximity to the seized drugs. We hold that the evidence was sufficient for a rational factfinder to conclude that defendant was guilty beyond a reasonable doubt of possession of heroin as charged under both counts. *State v. Wilson,* 227 Kan. 619, 626, 608 P.2d 1344 (1980); *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979). We further hold that the trial court did not abuse its discretion in failing to grant defendant a new trial. *State v. Rice,* 227 Kan. 416, Syl. ¶ 8, 607 P.2d 489 (1980).

Defendant's final point on the appeal is that the sentences imposed under the habitual criminal act (K.S.A. 1979 Supp. 21-4504) were so excessive as to constitute cruel and unusual punishment. Defendant was sentenced to a minimum of 15 years with a maximum of life imprisonment on each count, with the sentences to run concurrently. At sentencing, the trial court was presented with evidence of four prior unrelated felonies, and one arrest and indictment for possession of heroin with intent to sell. Additionally, the court had before it a presentence report which recommended that defendant needed institutional rehabilitation. The felony convictions dated from 1965 through 1969 and the arrest for heroin possession and sale was in 1977. There is no contention that the sentences, as imposed, exceeded statutory guidelines. The enhancement of a sentence under the habitual criminal act lies within the trial court's discretion, and, when the sentence imposed is within the permissible limits of the applicable statute, the sentence will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Buckner,* 223 Kan. 138, Syl. ¶ 6, 574 P.2d 918 (1977). We hold that the trial court did not abuse its discretion in sentencing defendant under the habit-

ual criminal act and that the sentences, as imposed, were not so excessive as to constitute cruel and unusual punishment.

The judgment of the district court is affirmed.