No. 55,288

STATE OF KANSAS, *Appellant*, v. STEVEN MICHAEL WORRELL, *Appellee.*

(666 P.2d 703)

Opinion filed July 15, 1983.

*Larry McClain,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for appellant.

*J. Roy Holliday, Jr.,* of Speer, Austin, Holliday, Lane & Ruddick, Chartered, of Olathe, argued the cause, and *Mary Stuckey Cofran,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an interlocutory appeal by the State, pursuant to K.S.A. 22-3603, challenging the propriety of the district court's order suppressing evidence seized during the execution of a search warrant.

The general background facts are as follows. On June 22, 1982, Ronald Yadon was killed near his home in Johnson County by a hidden assailant. He was shot six times with .22 caliber bullets. His stepson, Robert Steven Binford, was shot once in the leg but escaped by running from the ambush scene. Five slugs were removed from Yadon's body during the autopsy. Six .22 caliber shell casings were retrieved from the crime scene. The weapon utilized was determined to be a .22 caliber rifle.

The resulting police investigation focused upon defendant Steven Michael Worrell. Defendant was employed as the manager of the H and W Progressive Dealers warehouse in Leavenworth, Kansas. Defendant's father was president and a stock-

holder of the corporation which owned the warehouse. Defendant's parents were interviewed by police and advised the officers defendant had used a .22 caliber rifle two months earlier to shoot pigeons trespassing in the two upper floors of the warehouse.

On June 30, 1982, a search warrant was issued authorizing the law enforcement officers to search the warehouse for "spent .22 caliber slugs." On July 1, 1982, the search warrant was executed. Officers searched the two upper floors of the warehouse for spent .22 caliber slugs and .22 caliber shell casings. One spent slug and 13 shell casings were seized.

Defendant was subsequently charged with first-degree murder (K.S.A. 21-3401) and aggravated battery (K.S.A. 21-3414). Defendant moved to suppress the shell casings seized during the warehouse search contending their seizure was beyond the scope of the search warrant and was further rendered unlawful by the officers' prior intent to search for such unlisted items. The district court held defendant had standing to challenge the seizure and suppressed the shell casings. This appeal results. Additional facts will be stated as necessary.

The first issue involves the propriety of the district court's determination that defendant had standing to challenge the seizure of the shell casings. The field of law relative to the standing question herein has been the subject of considerable modification and refinement in recent years as summarized in the following excerpt from *State v. Whitehead,* 229 Kan. 133, 622 P.2d 665 (1981):

"Both in the trial court and again on the appeal, the defendant claimed that he had 'automatic standing' to challenge the legality of the search under *Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725 (1960), on the basis that the evidence seized in the search when the defendant was present on the premises was the basis for the criminal charge of possession of heroin.

"*Jones* involved a factual situation similar to the case at bar. The petitioner was arrested in an apartment belonging to a friend when the police entered with a search warrant and found drugs and paraphernalia in the apartment. Before trial, the petitioner moved to suppress the evidence, contending that it had been illegally seized. The evidence showed that Jones had a key to his friend's apartment, that he could come and go as he pleased, that he kept some clothing there, and that he had spent the night there before. The motion was denied on the ground that Jones lacked a possessory interest in the apartment and, therefore, lacked standing to challenge the validity of the search. The Supreme Court in *Jones* acknowledged that a criminal defendant in such a situation faced a dilemma:

" 'Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed sufficient, to convict him.' 362 U.S. at 261-62.
The court in *Jones* held that under the circumstances the defendant had 'automatic standing' to challenge the validity of the search.

"The 'automatic standing' rule established in *Jones* has been rejected in later decisions of the United States Supreme Court. In *Rakas v. Illinois,* 439 U.S. 128, 58 L.Ed.2d 387, 99 S.Ct. 421 (1978), *rehearing denied* 439 U.S. 1122 (1979), the court found the standing conferred in *Jones* because the defendant was 'legitimately on the premises' to be too broad. The court stated that the 'capacity to claim the protection of the Fourth Amendment depends not upon the property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' p. 143.

"In *United States v. Salvucci,* 448 U.S. 83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980), the court specifically rejected the 'automatic standing' rule of *Jones*. As noted above, the rule of *Jones* conferred 'automatic standing' when the element of possession was also an element of the criminal charge. The court in *Salvucci* approved *Rakas,* stating that an illegal search can only violate the rights of those who have a 'legitimate expectation of privacy in the invaded place.' *The basic test to determine whether or not a person present on the premises at the time of a search has standing to challenge the validity of the search is not whether that person 'had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched.'* 448 U.S. at 93.

"This court has also recognized that the Fourth Amendment right to protection from unreasonable searches is based upon the individual's right of privacy (*State v. Chiles,* 226 Kan. 140, 146, 595 P.2d 1130 [1979]), and that one does not have standing to challenge a search where there is no expectation of freedom from intrusion (*State v. Gordon,* 221 Kan. 253, 258, 559 P.2d 312 [1977])." 229 Kan. at 135-36. (Emphasis supplied.)

Did defendant herein have an "expectation of privacy" in the searched premises? We believe not.

We reach this conclusion on the basis of the following facts. The warehouse in question is a large structure of rather ancient vintage. Each of its four floors is approximately the size of a football field. The building was owned by a corporation in the wholesale building materials business. Defendant's father was president and a stockholder in the corporation. Defendant was the manager of the warehouse. The first floor of the warehouse was utilized for offices (including defendant's) and goods on display. The second floor contained items for sale, but not on display. The third floor was basically not in use, but did contain some damaged goods. The fourth floor was empty except for

some stacked pallets and discontinued displays. The corporation had decided to rent out the third and fourth floors and some clean-up activities had occurred preparatory thereto.

The building was protected by an alarm system. By virtue of numerous places of ready entry, pigeons had access to the upper floors. Their presence created problems such as the accidental setting off of the alarm system and the dirtying of inventory on the lower floors. The shooting of pigeons by defendant on the third and fourth floors was done to alleviate these problems.

Defendant had no personal property stored on either the third or fourth floors of the structure nor were business records stored there. As warehouse manager defendant was charged, among other things, with security of the structure. Although the upper floors were not open to the public, defendant, his father, his father's two partners, and some thirteen other stockholders had access to the upper floors. Other employees went to the upper floors when directed to do so for cleaning or other purposes.

In support of his claim of an "expectation of privacy" in the third and fourth floors of the warehouse, defendant relies on *Mancusi v. DeForte*, 392 U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120 (1968). DeForte was a union official suspected of various union-related crimes. DeForte ignored a subpoena duces tecum for union records, and his office was searched without a warrant with union records being seized from his desk and file cabinets. Under such circumstances the United States Supreme Court held defendant had an expectation of privacy in his office. The *Mancusi* case is readily distinguishable from the facts herein.

We conclude defendant had no expectation of privacy in the upper floors of the warehouse and, hence, had no standing to challenge the propriety of the seizure of the shell casings.

The order of the district court suppressing the seized shell casings is vacated and the case is remanded for further proceedings.