(581 P.2d 1190)
No. 49,438

STATE OF KANSAS, *Appellee,* v. MONA M. DAVIDSON, *Appellant.*

Opinion filed July 28, 1978.

*Charles M. Tuley,* of Atchison, for the appellant.

*John L. Weingart,* assistant county attorney, *Curt T. Schneider,* attorney general, and *Samuel L. Schuetz,* county attorney, for the appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

SWINEHART, J.: The appellant was charged with selling cereal malt beverages to minors, contrary to K.S.A. 41-2704. She was first tried on December 6, 1976, in the county court of Brown County. There she was found guilty of the sale of cereal malt beverages to minors, a misdemeanor. On December 10, 1976, she filed her notice of appeal to the district court. On March 28, 1977, the defendant was tried by a jury in the Brown County district court. The jury returned a guilty verdict. The defendant appeals from the conviction.

The defendant's charge and subsequent conviction were based upon an alleged sale of beer to four minor girls on August 19, 1976, at the Dew-Drop Inn in Hiawatha. That evening police officers observed four girls putting beer in the trunk of a car parked outside of the Dew-Drop Inn. The officers suspected that the four girls might be under the age of eighteen. Officer Duncan turned his police car around and followed them. He stopped them and asked them to open the trunk. In the trunk he found six six-packs of beer. He told the girls to follow him to the police station, which they did. There each girl gave a statement as to what had happened. They were eventually released to their parents. No charges were ever filed against them.

The defendant's main defense tactic was to prove that it was not she who sold the beer to the girls. She presented evidence that she normally worked from 11:00 to 4:00 in the afternoon and then went home. Sometimes, she testified, she returned to work at approximately 8:00 to help the tavern owner out, and testified that she could not remember whether she had returned on August 19, 1976. She said that if she did return on that date, she was certain that she had not come back before 8:00. The girls testified in district court that they had been picked up at approximately 8:30 or 8:40. The defendant attacks this testimony by claiming that at the misdemeanor trial in the lower county court, they testified that they were picked up at 7:00 or 7:30. This, she claims, proves that it was not she who sold the beer because she never returned to the tavern until 8:00. Under cross-examination, the girls admitted that they discussed the time with officers before trial because they had forgotten details of their arrest, such as the exact time they were stopped, in the nearly nine months that elapsed between the date of their arrest and the date of the trial in district court. The defendant claims that the officers knew that she did not come to work until 8:00 and therefore told the girls to testify that they were picked up at 8:40. Officer Duncan, who arrested the four girls, testified that his report reflected that he first saw the girls in the parking lot at the Dew-Drop Inn at 8:05 in the evening and that he stopped them at approximately 8:40.

No testimony was presented as to how the defendant was identified to police as the one who actually sold the beer to the four girls. The jury asked about this and the court replied that it could not be answered, and that they would have to determine

whether or not they thought defendant was guilty beyond a reasonable doubt on the basis of the evidence that had been presented at the trial.

The trial in district court took place on March 28, 1977. On April 20, 1977, the defendant filed a motion asking permission to file a motion for new trial out of time. The motion for new trial should have been filed on or before April 7, 1977. The motion stated that the reason for the delay was that the defendant had changed lawyers on April 12. On May 2, 1977, the defendant was granted seven days within which to file a motion for new trial. On May 9, 1977, the defendant's motion for new trial was filed. The motion was subsequently denied.

K.S.A. 22-3501(1) provides: "The court on motion of a defendant may grant a new trial to him if required in the interest of justice." The statute further provides that a motion made for any reason other than discovery of new evidence must be made within ten days after the verdict or finding of guilty.

Case law interpreting K.S.A. 22-3501 principally involves a motion for a new trial on the grounds of newly discovered evidence. In *State v. Larkin,* 212 Kan. 158, 510 P.2d 123 (1973), it was said:

"The law is well settled in this state that the granting of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court, and such motion is ordinarily not granted unless the trial court is satisfied that such new evidence would probably produce a different verdict. The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Law,* 203 Kan. 89, 452 P.2d 862; *United States v. Gleeson,* 411 F.2d 1091; *State v. Hale,* 206 Kan. 521, 479 P.2d 902; and *State v. Campbell,* -207 Kan. 152, 483 P.2d 495.)

"It has also been held where a new trial is sought on the basis of recanting testimony of a prosecution witness, the weight to be given such testimony is for the trial judge passing on the motion for a new trial. (*State v. Theus,* 207 Kan. 571, 485 P.2d 1327.)" *Larkin,* supra, p. 161.

Although this language pertains specifically to a motion for a new trial on the basis of newly discovered evidence, the same standards apply to a motion for a new trial made for other reasons: (1) the decision of whether or not to grant a new trial is within the discretion of the trial court; (2) the motion should not be granted unless the trial court is satisfied that retrying the case for whatever reason the defendant advances in his motion would probably result in a different verdict.

In her motion the defendant advanced four reasons for which

she moved the court to grant her a new trial: (1) the failure to introduce the beer into evidence; (2) the failure of her prior counsel to conduct adequate *voir dire;* (3) the failure of her prior counsel to adequately cross-examine State's witnesses; and (4) the failure of her prior counsel to present evidence concerning the first trial of the matter in county court. On appeal the defendant appears to assert only two of the four reasons she asserted below; that is, the failure to introduce the beer and the alleged discrepancies in the girls' testimony concerning when they were arrested.

The trial court did not err in refusing to grant a new trial for the State's failure to introduce the beer into evidence. The defendant cites no cases supporting the contention that the beer had to be introduced in order to prove her guilt. A search of statutory and case law, as well as encyclopedias, reveals no authority for the defendant's argument. The failure to introduce demonstrative evidence, like the failure to introduce a particular bit of testimonial evidence, does not constitute reversible error unless that evidence is essential to prove one of the elements of the crime.

The elements of the crime that the defendant was charged with, as stated in the judge's instructions to the jury, are: (1) that the defendant sold cereal malt beverages to a person under the age of eighteen and (2) that this act occurred on or about August 19, 1976. No objection was made to these instructions. The State presented the testimony of the police officer and of three of the four girls who were arrested in its attempt to prove these two elements of the crime. By returning a guilty verdict, the jury indicated that it found the testimonial evidence to be sufficient to prove the elements of the crime.

Although relevant, non-prejudicial demonstrative evidence should be introduced whenever possible, a brief consideration of the problem shows that it is impossible for courts to define exactly what evidence, either testimonial or demonstrative, has to be introduced in order to prove the elements of a particular crime. If the court were to assume the responsibility of defining what evidence is necessary, the task would be impossible and endless. The decision of what significance to attach to a party's failure to introduce a particular bit of evidence, whether demonstrative or testimonial, must remain with the trier of fact.

In addition to the above reasons for not disturbing the trial

court's decision not to grant a new trial, the defendant has shown no way that the introduction of the beer would change the verdict. It was therefore not error for the trial court to refuse to grant a new trial for this reason.

This court has addressed the evidentiary matter as the defendant framed it. However, we would point out that if the failure to introduce the beer had amounted to a failure to prove one of the essential elements of the crime, the proper way to challenge the omission would have been by a motion to discharge.

On appeal the defendant also asserts that the trial court should have granted a new trial because of the discrepancy in the girls' testimony relating to the time they were arrested. The defendant alleges that at the preliminary trial in county court the girls testified that they were stopped at 7:00 or 7:30 but at the trial in district court they claimed that they were stopped at 8:40. She claims that this is significant because she did not begin work until 8:00. A review of the transcript reveals that the girls were cross-examined concerning this matter at the trial. The defendant's allegations concerning the inconsistencies were presented to the jury and the defendant's theory about why the discrepancy existed was fully explained to the jury. The trial court was not convinced that presenting this evidence to another jury would make any difference in the verdict. Since the evidence was presented to the first jury and the trial court does not appear to have abused its discretion in refusing to grant the defendant's motion for new trial, the trial court's decision is affirmed on appeal.

The defendant's motion for a new trial seems to allege that she was not effectively represented in the first trial. Her appellate brief does not raise the point and it must therefore be considered to be abandoned on appeal.

The defendant also alleges that it was not proper to charge her under K.S.A. 41-2704. Basically, the defendant argues that K.S.A. 41-2704 is penal in nature. Relying on the well-known rule that penal statutes must be construed strictly in favor of the accused, she argues that the statute does not make selling beer to minors a misdemeanor. Rather, she contends the statute makes it a misdemeanor for minors to purchase beer. Therefore, she reasons she should have been discharged or acquitted at her trial.

It is indisputable that K.S.A. 41-2704 is in fact penal in nature. The penal nature of the statute was established in *State v. Erhart,*

176 Kan. 589, 272 P.2d 1097 (1954). In that case the defendants were charged with violating another portion of the same statute. They were charged with possession of alcoholic liquors on premises licensed for the sale of cereal malt beverages and the sale of cereal malt beverages on Sunday. At trial the defendants moved to be discharged on the ground that the *statute was not penal* in nature. The court rejected this contention. It was held that the statute itself contains positive declarations by the state legislature prohibiting certain actions. Although 41-2704 itself contains no penal provisions, K.S.A. 41-2711 makes a violation of any of the provisions of the act a misdemeanor punishable by a fine of not more than $500 or by imprisonment in county jail for not more than one year. The *Erhart* court held that these two statutes, read together, do create a penalty and therefore held that K.S.A. 41-2704 was in fact a penal statute.

Basically the rule of strict construction of penal statutes means that ordinary words are to be given their ordinary meaning and that the penal statute should not be read so as to add to it something that is not readily found therein or to read out of it what as a matter of ordinary English is in it. *Esters v. State,* 1 Kan. App. 2d 503, 505, 571 P.2d 32 (1977).

In making her argument that strict construction of the statute does not make selling beer to minors a criminal violation the defendant points to specific language within the statute: "Any person under eighteen (18) years of age who purchases or attempts to purchase any cereal malt beverages in any licensed place of business shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished as provided by law." If the language cited by the defendant were the only language of the statute, her argument would have some merit. Applying the rules of strict construction to this language, the statute would not make selling beer to a minor a criminal violation.

However, the defendant's argument fails to take into account the sentence which immediately precedes the sentence which she quotes. The preceding sentence reads: "No person under eighteen (18) years of age *shall be permitted* to buy or drink any of such beverages in or about such place of business." (Emphasis added.) This sentence clearly is directed at persons engaged in selling cereal malt beverages. It is a prohibition not of minors buying beer but of someone else permitting them to do so.

Applying the rule that the language is to be given its ordinary meaning, obviously this sentence means that those engaged in selling beer are not to sell beer to minors.

Reading the act in *pari materia,* it appears that the legislature has established certain rules of conduct for the sellers of cereal malt beverages which may not be modified by local ordinances. Among these are the prohibition against selling beer between the hours of 12:00 midnight and 6:00 a.m., or on Sunday, or on the day of any election. Beer taverns are also forbidden to have alcoholic liquor on the premises. Finally, the sale of beer to minors is prohibited. All of these acts are made misdemeanors by section 41-2711. It would seem that the only reason that 41-2704 specifically makes purchase of beer by a minor a misdemeanor is that the rest of the act is directed to tavern owners and employees, and their violations of the act are covered by 41-2711. However, the legislature also saw fit to include within the prohibitions of the act the purchase of beer by minors. Since this is the only place in the act that minors are mentioned, the legislature apparently thought it would clarify the criminal nature of the minor's purchase of beer if it was specifically mentioned here that it was a misdemeanor, rather than relying on the more general application and coverage of 41-2711.

The defendant was properly charged under K.S.A. 41-2704 and the trial court did not err in refusing to discharge or acquit her at the end of the presentation of the State's evidence.

The trial court's judgment is affirmed.