(603 P.2d 194)
No. 50,467

State of Kansas, *Appellee,* v. Otis Goodwin, *Appellant.*

Petition for review denied January 29, 1980.

Opinion filed November 21, 1979.

*Ralph Winters, Jr.,* of Wichita, for the appellant.

*Stuart W. Gribble,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, for the appellee.

Before Rees, P.J., Spencer and Swinehart, JJ.

Swinehart, J.: Defendant appeals from his conviction of possession of heroin under K.S.A. 1978 Supp. 65-4127a.

Two points are raised by defendant on appeal: (1) The court erred in failing to sustain defendant's motion for dismissal at the close of the State's case; and (2) the court erred in not sustaining a motion to set aside the guilty verdict and grant a new trial.

The evidence disclosed that the defendant and a male companion were at a residence in Wichita occupied by Marshall Bottoms. On the day in question, officers of the Wichita Police Department were executing a search warrant, the validity of which is not in question, at Bottoms' residence. The defendant and his companion were observed by the officers entering the home just before their arrest. Prior to this incident, the officers had not been aware that they were involved with Bottoms. When the police first entered the residence, the parties were standing in the hallway of the home. Bottoms retreated to the bathroom, closed the door and flushed the toilet. The defendant and his companion ran into a nearby bedroom. When Bottoms was searched, he had $331 in his possession. In the bedroom where the defendant and his companion were found, a gold compact was discovered on a bed. Upon inspection, the compact was

found to contain neither a mirror nor cosmetics, but rather several balloons containing heroin. The market value of the heroin was $200 to $240. One of the officers testified that under such circumstances, *i.e.*, where a drug sale is suspected, one person is usually found with the money and another with the drugs.

On motion for acquittal at the close of the evidence, the trial court must determine whether upon the evidence, giving full play to the right of the jury to determine credibility of witnesses, to weigh the evidence and to draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If so, then the motion must be denied and the question submitted to the jury. *State v. Racey,* 225 Kan. 404, 590 P.2d 1064 (1979); *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973). Whether to grant a new trial rests within the sound discretion of the trial judge, and this decision will not be disturbed on appeal absent a showing of abuse of discretion. In criminal cases a new trial may be granted in the interest of justice. K.S.A. 22-3501; *State v. Bell,* 224 Kan. 105, 577 P.2d 1186 (1978); *State v. Davidson,* 2 Kan. App. 2d 463, 581 P.2d 1190 (1978).

In *State v. Bullocks,* 2 Kan. App. 2d 48, 49-50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978), the court stated:

" 'Possession' of marijuana is having control over the marijuana with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence. *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247 [1976]. Possession may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. *State v. Woods,* 214 Kan. 739, 744, 522 P.2d 967 [1974].

"When a defendant is in nonexclusive possession of premises on which drugs are found, the better view is that it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs. See Annot., 'Conviction of Possession of Illicit Drugs Found in Premises of which Defendant was in Nonexclusive Possession,' 56 A.L.R.3d 948 (1974). Such parallels the rule in Kansas as to a defendant charged with possession of drugs in an automobile of which he was not the sole occupant. *State v. Faulkner,* [220 Kan. 153]. Incriminating factors noted in *Faulkner* are a defendant's previous participation in the sale of drugs, his use of narcotics, *his proximity to the area where the drugs are found,* and the fact that the drugs are found in plain view. Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possessions to the drugs." (Emphasis supplied.)

Under the facts of this case Bottoms, who occupied the house, was a suspected drug dealer. He was present in the residence

along with the defendant and his companion. Bottoms was in possession of $331 which was near the amount that the suspected drugs would have brought on the open market, whereas the defendant and his companion did not have any substantial amounts of money on their persons. When defendant and his companion hurriedly tried to evade the officers by going to a bedroom, the compact containing the drugs was discovered on the bed in plain view, and the discovery was made almost immediately when officers entered the room.

It was for the jury to determine whether such suspicious behavior and proximity to the drugs gave rise to an inference of possession. The court, therefore, did not err in denying the motion for acquittal at the close of the State's evidence. Likewise, the court did not err in failing to set aside the verdict of guilty, and we cannot say that the verdict was contrary to the evidence.

The Supreme Court recently said in *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979):

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? Following *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979)."

We find that there was sufficient competent evidence to support the verdict, and that the trial court did not abuse its discretion in refusing to grant a new trial.

Judgment is affirmed.

REES, J.: I dissent.

Although the evidence is only sufficient to establish that defendant's status in the Bottoms residence was that of a social guest, for the purpose of this decision I will join with the majority in its unstated but implicit premise that defendant was in non-exclusive possession of the premises, that is, the bedroom if not the residence. The pivotal question here is whether there were other incriminating circumstances linking the defendant to the balloons of heroin found in the compact. *State v. Bullocks,* 2 Kan. App. 2d 48, 50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978). The majority, relying upon *Bullocks* and *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247 (1976), holds there was the requisite link. I disagree. There is no linkage proof of the quality existent in *Bullocks* or *Faulkner.*

In *Bullocks,* the link did not exist with respect to marijuana found in a coat not belonging to the defendant but found in a closet in a dwelling where defendant lived. The marijuana underlying the conviction was found in a trailer in the front yard. Defendant acknowledged the trailer was his and used by him. As I read the opinion, the discovery of openly displayed marijuana paraphernalia in the residence was held to be the linking evidence—evidence of possession (knowledge and intent to control) of marijuana found on the premises (the house and yard).

In *Faulkner,* defendant was convicted of possession of a controlled substance with intent to sell. The case concerned drugs found in an automobile of which defendant was not the sole occupant. The linking evidence to support a finding of possession was evidence of a prior conviction of possession (evidence relevant to the issue of knowledge of and intended exercise of control of the subject drugs), prior instances of possession, defendant appeared "high" when arrested but no alcohol smell was detected, all the drugs found were found on defendant's side of the car, a hypodermic needle was found on the floorboard on defendant's side of the car, and the drugs, found on defendant's side of the car, were in plain view.

In *Bullocks,* 2 Kan. App. 2d at 50, reference is made to the following language in *Faulkner:*

"The better view appears to be that when illicit drugs are found in an automobile containing more than one person, the defendant's *mere presence* in the vehicle, without more, *would not sustain* his *conviction* for possession. Other circumstances which have been held sufficiently incriminating to link a defendant with illicit drugs in a vehicle are [1] his previous participation in the sale of drugs, [2] his use of narcotics, [3] his proximity to the area where drugs are found and [4] the fact the drugs were found in plain view. *While none of these circumstances, by itself, may be sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession to support the verdict."* (Emphasis added.) 220 Kan. at 160.

*Bullocks* adds three additional circumstances or factors:

"Other factors noted in cases involving nonexclusive possession include [1] incriminating statements of the defendant, [2] suspicious behavior, and [3] proximity of defendant's possessions to the drugs." 2 Kan. App. 2d at 50.

Of the seven circumstances, four are indisputedly absent in the case before us. We must consider the other three with regard to the evidence presented to the jury by the prosecutor.

1. Drugs in plain view. There is no evidence that the heroin underlying the prosecution's case against defendant was in plain view. The balloons were in the compact. Not only is there no evidence the compact was open and its contents observable, in plain view, when defendant was apprehended in the bedroom, the clear thrust of the evidence is that the balloons were found only when some officer opened the compact found on the bed. The plainly viewed physical evidence in *Bullocks* was the marijuana paraphernalia; in *Faulkner*, it was the drugs—amobarbital tablets.

2. Proximity to the area where drugs are found. This relates to possibly the most astonishing observation to be made of the prosecution's presentation of its case. The bedroom was shown to be approximately twelve feet square. Only two members of the search party testified: Herbel, the evidence officer, and Williams, the officer who led the entry into the dwelling. Each testified that when he first looked into the bedroom it was *occupied* by *four* persons: defendant, Whitehead (defendant's "companion" and codefendant), and two police officers (Booth and Evans). Booth and Evans had entered the bedroom and apprehended defendant and Whitehead before either Williams or Herbel looked in or entered the bedroom. Neither Booth nor Evans was called by the prosecution to testify. Under the evidence, defendant, Whitehead, Booth and Evans were in equal proximity to the balloons of heroin found. There is no evidence that the compact was anywhere in the bedroom when it was occupied by only defendant and Whitehead. Clearly this observation in no way suggests the existence of the slightest inference of questionable conduct by either Booth or Evans; it serves simply to demonstrate factual deficiency of proof of a circumstance heavily relied upon by the prosecution, the trial judge and the majority as a basis for a finding of guilt by circumstantial evidence.

3. Suspicious behavior. The majority uses the words "hurriedly tried to evade the officers" in describing defendant's movement from the living room-hallway area to and into the bedroom upon the unannounced entry of the seven police officers (only one was in uniform) into the dwelling, which was made with brandished firearms (including at least one shotgun) and one or more officers shouting "police." To me, the majority's chosen words connote flight to avoid apprehension; they border on an

assumption of the role of fact finder, an inappropriate action for an appellate tribunal. Williams testified the three persons present in the dwelling "scampered" and two of these three, defendant and Whitehead, ran into the bedroom. Williams' cross-examination testimony, fairly considered, included his admission that he too would have scampered if faced with an entry such as was made by the seven member search party.

With respect to the majority's innuendo of a most recently effected heroin sale, review of the record fails to reveal evidence to support the majority's statement that defendant and Whitehead were observed by the officers entering the home just before the arrest; the evidence is that defendant and Whitehead were present in the dwelling when the officers entered; the prosecution's evidence showed nothing with regard to how long they had been present; Whitehead's testimony on this point is so indefinite that it is valueless.

The language of *Bullocks* quoted by the majority is a correct statement of law. However, it is my conclusion that the evidence presented by the prosecution at the trial of this case is so far short of that in *Bullocks* and *Faulkner* that defendant's conviction should be vacated on the ground that as a matter of law the evidence was insufficient.