(352 P.3d 580)
No. 112,387

STATE OF KANSAS, *Appellant*, v. JESSICA V. COX, *Appellee*.

Opinion filed April 10, 2015.

*Daniel D. Gilligan*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Sam S. Kepfield*, of Hutchinson, for appellee.

Before MALONE, C.J., PIERRON and ATCHESON, JJ.

MALONE, C.J.: The State appeals the district court's decision granting Jessica V. Cox's motion to suppress evidence. Prior to trial, Cox moved to suppress all evidence stemming from a law enforcement officer's search of her bag found in her friend's car. First, the State challenges Cox's standing to contest the search. Second, the State argues that the officer had implied consent to search the bag based on the totality of the circumstances. Finally, the State argues that the district court erred in applying the exclusionary rule because the officer acted in good faith in searching Cox's bag. For the reasons stated herein, we affirm the district court's decision to suppress the evidence.

On December 12, 2013, Trooper Matt Peil of the Kansas Highway Patrol stopped Rhonda Simmons' car because the Hutchinson Police Department wanted to question her in connection with an identity theft. Although Simmons claimed to lack identification, Peil noticed that several bags, including two purses, were lying in the back of her car. When Peil asked about the purses, Simmons indicated that they belonged to her friend Cox, who had been in her car earlier that day. Simmons explained that she had given Cox a ride to the Hutchinson community corrections office, where Cox had an appointment.

After learning that the purses belonged to Cox, he removed them from Simmons' vehicle and carried them back to his car. Then, in order to verify Simmons' story, Peil called Cox at the community corrections office. Cox confirmed to Peil that she had indeed left her bags in Simmons' car, and she accurately described the two purses in question. She also informed Peil that she had left a paper shopping bag from the clothing store, The Buckle, in the back of Simmons' car and that the bag contained a wood sander.

When Peil approached the car to retrieve this bag, he discovered multiple Buckle-branded shopping bags in the back of the vehicle. He asked Simmons to identify Cox's bag in particular, which she did. Peil then removed the bag from the car and opened it to confirm that it contained the wood sander. When Peil opened the

bag, he discovered a methamphetamine pipe. Based on this discovery, Peil contacted community corrections for permission to search Cox's other bags and discovered methamphetamine and paraphernalia in a purse along with Cox's identification. When Peil arrived at community corrections to arrest Cox, he discovered more methamphetamine on her person. In his later testimony, Peil acknowledged that Cox never gave him consent to open her bag. He further acknowledged that Cox never granted him permission to search for the wood sander but instead simply mentioned that it would be at the bottom of her Buckle bag.

The State charged Cox with one count of possession of methamphetamine with intent to sell, one count of possession of drug paraphernalia with intent to distribute a controlled substance, and one count of possession of methamphetamine without tax stamps affixed. Prior to trial, Cox filed a motion to suppress the evidence discovered in her bags and on her person. Cox argued that she had a legitimate expectation of privacy in her bags despite their presence in Simmons' car and that Peil illegally searched them.

At the suppression hearing, Peil testified about the circumstances surrounding his stop of Simmons' vehicle and his search of Cox's bags. The State argued that Cox implicitly consented to the search based on the circumstances. The State also argued that Cox lacked standing to challenge the search because she was not in Simmons' car at the time of the search and she never testified at the hearing to demonstrate any sort of interest in the bags. In contrast, Cox argued that she maintained a privacy interest in her purses and Buckle bag regardless of their location and that she never consented to any search.

After hearing the evidence and the arguments, the district court suppressed all the evidence stemming from Peil's search of the Buckle bag. The district court first expressed concern with Peil's methodology, including his initial decision to remove Cox's bags from Simmons' vehicle. The district court then determined that Cox had standing because Peil established Cox's ownership of the bags after removing them from Simmons' vehicle. The district court further determined that once Simmons specifically identified the Buckle bag that belonged to Cox, Peil lacked any grounds to

search through the bag. The district court suppressed all the evidence stemming from the search of the Buckle bag as fruit of the initial illegal search. The State timely filed this interlocutory appeal.

On appeal, the State claims the district court erred in suppressing the evidence. The State renews its arguments that Cox lacked standing to challenge the search and that Cox implicitly consented to the search based on the circumstances. The State also argues for the first time on appeal that the district court erred in applying the exclusionary rule because Peil acted in good faith in searching Cox's bag.

In reviewing the granting or denial of a motion to suppress evidence, the court determines whether the factual findings underlying the district court's suppression decision are supported by substantial competent evidence. In making this determination, appellate courts do not reweigh the evidence or reassess the credibility of witnesses. The ultimate legal conclusion drawn from those factual findings are reviewed under a de novo standard. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

*Standing*

Initially, the State challenges Cox's standing to contest the search. Because "[a]n illegal search can only violate the rights of those who have a legitimate expectation of privacy in the invaded place," the test to determine standing hinges on whether the individual "had an expectation of privacy in the area searched." *State v. Worrell*, 233 Kan. 968, Syl. ¶ 1, 666 P.2d 703 (1983). A person who lacks "an ownership or possessory interest in the property searched has little legitimate expectation of privacy in that property." *State v. Wickliffe*, 16 Kan. App. 2d 424, 429, 826 P.2d 522 (1992).

When considering an individual's standing to challenge the warrantless search of a container which is being transported from place to place, it is important to note that "[t]he owner of such a container cannot be said to have lost standing merely because he is not openly exercising direct control of it at the time of the search." 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014). In fact, the owner of a container continues to have standing "after he has . . .

put it into the hands of another person" regardless of whether the officer knows the identity of the owner. 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014). Only if the owner abandons the container or "leaves it in circumstances manifesting no justified expectation of privacy" will the owner lack standing to challenge a search of that container. 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014).

Under these standards, Cox clearly has standing to challenge the search of the Buckle shopping bag. Cox and Simmons both confirmed that Cox knowingly left her bags in Simmons' car. Simmons positively identified which shopping bag belonged to Cox, and Peil removed and searched only that bag. Even if, as the State argues, Peil did not know for certain that the Buckle bag belonged to Cox before searching it, "the 'state of mind of the searcher regarding the possession or ownership of the item searched is irrelevant to the issue of standing.' " 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014). Cox clearly maintained a legitimate expectation of privacy in the bag she readily identified as her own. Thus, Cox had standing to contest the search of the bag.

*Implied Consent*

Next, the State argues that Cox implicitly consented to the search of her bag based on the circumstances. Specifically, the State contends that after Cox informed Peil that her Buckle bag contained a wood sander, "[h]uman nature would cause a reasonable person to check for a sander" in the bag in order to verify ownership of the bag.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment to the United States Constitution. *State v. Robinson*, 293 Kan. 1002, 1013, 270 P.3d 1183 (2012). Additionally, § 15 of the Kansas Constitution Bill of Rights provides the same protection from unlawful government searches and seizures as the Fourth Amend-

ment to the federal Constitution. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011).

Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Consent is one recognized exception to the warrant requirement. *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). When consent to search is an issue, the State has the burden of establishing the scope and voluntariness of the consent. 289 Kan. at 380.

As a general rule, in order for an individual's consent to search to be valid, " 'two conditions must be met: (1) There must be clear and positive testimony that consent was unequivocal, specific, and freely given and (2) the consent must have been given without duress or coercion, express or implied.' " 289 Kan. at 381. Moreover, mere acquiescence or submission to a show of lawful authority is inadequate to demonstrate voluntary consent. *State v. Jones*, 279 Kan. 71, 78, 106 P.3d 1 (2005).

There is no doubt that Cox never expressly consented to the search of her bag. Peil candidly admitted that Cox never provided him with express consent to search her bags. Instead, Cox simply mentioned that her particular Buckle bag contained a wood sander. The State contends that the combined effect of the circumstances and Cox's statement about the sander indicate that she provided Peil with implicit consent to search her bag.

The State provides no legal authority that directly supports its contention that Cox implicitly consented to the search of her bag based on the circumstances. Our own legal research reveals little caselaw on the subject of implied consent outside the realm of the Kansas implied consent law requiring drivers to submit to one or more tests of the person's blood, breath, urine, or other bodily substance to determine the presence of alcohol or drugs. See K.S.A. 2014 Supp. 8-1001. Cases interpreting K.S.A. 2014 Supp. 8-1001 are not helpful in resolving whether Peil's warrantless search of Cox's bag was justified under a theory of implied consent.

Although not cited by either party, we find guidance on the subject of implied consent in *State v. Poulton*, 37 Kan. App. 2d

299, 306-08, 152 P.3d 678 (2007), *aff'd in part and rev'd in part on other grounds* 286 Kan. 1, 179 P.3d 1145 (2008). In that case, officers arrived at the defendant's home in search of a woman who had violated her parole. When the defendant offered to retrieve the woman from inside the house, the officers followed the defendant inside the house even though he never expressly consented to their entry. Once inside the house, the officers discovered evidence of other crimes. The district court determined that because the defendant never stopped the officers from coming inside, he provided the officers with implied consent to enter.

On review, this court considered the general requirements for voluntary consent and noted that "[c]onsent by implication . . . is contrary to established law." 37 Kan. App. 2d at 307. This court noted the general rule that in order for an individual's consent to search to be valid, the consent must be "unequivocal and specific" and "freely and intelligently given." 37 Kan. App. 2d at 307. Based on these standards, this court concluded that the defendant's acquiescence in allowing the officers to enter his home did not rise to the level of voluntary consent. 37 Kan. App. 2d at 307.

Although the facts in *Poulton* differ from Cox's case, the general principles of law governing consent to search are applicable herein. The State's argument that Cox implicitly consented to the search based on the circumstances fails for at least two reasons. First, Simmons specifically identified the Buckle bag that belonged to Cox. Thus, there was no need for Peil to open the bag to look for the wood sander in order to verify ownership of the bag. Second, Peil had the opportunity to ask Cox for her consent to search the bag when he spoke with her on the telephone, but he failed to do so. Under these circumstances, any consent implied by the situation is simply insufficient to substitute for the required express consent. See *Poulton*, 37 Kan. App. 2d at 307.

In summary, the record lacks any indication that Cox's consent to the search of her bag was " 'unequivocal, specific, and freely given.' " *Ransom*, 289 Kan. at 381. Because it cannot fairly be said that Cox consented to the search of her Buckle bag, the district court did not err in suppressing the evidence found in the bag.

*Good-faith exception to the exclusionary rule*

Finally, the State argues that the unique facts of this case demonstrate that suppression is not required. The State essentially contends that Peil's actions constituted a reasonable, good-faith attempt to ensure that the bag belonged to Cox and that, as such, suppression serves no deterrent purpose.

As a preliminary matter, the State failed to make this argument before the district court and is raising the good-faith issue for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Although there are exceptions to this general rule, an appellant who fails to raise an issue below is required by Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) to explain why that issue should be considered for the first time on appeal. Failure to comply with this rule can result in the appellate court deeming the issue improperly briefed and therefore waived or abandoned. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). The State provides no explanation as to why it only now raises the good-faith exception to the exclusionary rule. For this reason alone, the State's argument is not properly before this court.

In any event, the State's argument is without merit. The exclusionary rule is a judicially created remedy which exists to prevent the use of unconstitutionally obtained evidence in a criminal proceeding against the subject of the illegal search. The rule applies when it would act as a deterrent to prevent law enforcement officers from violating citizens' constitutional rights. See *Hudson v. Michigan*, 547 U.S. 586, 594, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006).

There are two recognized exceptions to the exclusionary rule based on a law enforcement officer's good-faith conduct. First, the exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. See *State v. Powell*, 299 Kan. 690, 700, 325 P.3d 1162 (2014) (citing *United States v. Leon*, 468 U.S. 897, 900,

104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 [1984]). Second, the exclusionary rule should not be applied to bar the use of evidence obtained by officers acting in reasonable reliance on a statute which is later found to be unconstitutional. See *State v. Daniel,* 291 Kan. 490, 498-500, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011) (relying on *Illinois v. Krull,* 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 [1987]).

This is not a case where Peil was relying in good faith on a search warrant later found to be invalid or on a statute later declared unconstitutional. Although Peil's motivation for opening Cox's Buckle bag may have been benign, the fact remains that he violated Cox's constitutional rights by searching her bag without a warrant and without her consent. This case presents a situation where the exclusionary rule *should* be applied in order to deter Peil and other law enforcement officers from making the same type of mistake in the future. Thus, the district court correctly applied the exclusionary rule to suppress the evidence found in the Buckle bag. All the evidence stemming from the search of the Buckle bag was properly suppressed as fruit of the initial illegal search. See *Wong Sun v. United States,* 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

Affirmed.

＊ ＊ ＊

PIERRON, J.: Dissenting. I respectfully dissent. The Fourth Amendment to the United States Constitution, which was applied to the states through the Fourteenth Amendment by *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 15 of the Kansas Constitution Bills of Rights provides similar protections.

We have adopted the exclusionary rule to enforce these protections. The theory is that suppressing evidence obtained in violation of the Fourth Amendment will discourage these violations and will also separate government efforts in enforcing the law from unlawful police actions.

I do not believe there was a Fourth Amendment violation here, and there is no cause to apply the exclusionary rule. The search was reasonable.

The majority has set out the facts of the case quite well. Officer Peil was not looking for any evidence of a crime in Cox's bags. He was just trying to make sure he had the right bags. He called Cox on the phone, and Cox told him that she had left a paper shopping bag from a clothing store and the bag contained a wood sander. Officer Peil checked the bag in question and found the wood sander and the methamphetamine pipe.

The officer was not trying to find evidence when he looked for the wood sander and unexpectedly found the pipe. Cox told him the bag he was wanting to separate out from Simmons' bags had a wood sander in it. Cox did not tell the officer to stay out of the bag in question. The officer quite reasonably believed Cox's comments about there being a wood sander in the bag in question was to be used by him to help separate the bags.

The facts in the record show the officer's actions were reasonable, there was no violation of the Fourth Amendment, and no reason to apply the exclusionary rule.