NOT DESIGNATED FOR PUBLICATION

No. 123,300

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHRISTOPHER ALAN HILL,
*Appellee*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed July 2, 2021. Affirmed.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

No appearances by appellee.


Before POWELL, P.J., BRUNS, J., and STEVE LEBEN, Court of Appeals Judge Retired, assigned.


PER CURIAM: The State appeals from an order of the district court granting Christopher Alan Hill's motion to suppress evidence seized in a search of a backpack located in a vehicle in which he was a passenger. For the first time on appeal, the State contends that Hill lacks standing to claim an expectation of privacy in the vehicle or its contents. For the reasons set forth in this opinion, we conclude that Hill had standing to challenge the search of his backpack. Thus, we affirm the district court's order suppressing the items seized from Hill's backpack.

1

On June 19, 2019, the State charged Hill with possession of methamphetamine and possession of drug paraphernalia with intent to use. Prior to trial, Hill filed a motion to suppress evidence seized as a result of a search of a vehicle during a traffic stop in Hutchison. The vehicle was driven by Heather Gilmer, and he was a passenger in the vehicle. In his suppression motion, Hill claimed that the police officer who stopped the vehicle for an illegal tag violation improperly prolonged the stop so that a drug dog could conduct a free-air sniff. Specifically, Hill argued that the officer did not have reasonable suspicion that there was evidence of a crime within the vehicle in order to justify the search.

The police officer who performed the search was the only witness to testify at the suppression hearing. In addition, the officer's body camera video of the traffic stop was played at the hearing. The evidence presented established that on June 14, 2019, around 11:45 p.m., the officer saw a 2004 Chevy Cavalier being driven with an expired tag. The officer testified that he recognized the vehicle as the one he had stopped several weeks earlier for the same traffic infraction. After the officer confirmed with dispatch that the tag was still expired, he followed the vehicle into a Burger King parking lot.

The officer first spoke with the driver of the vehicle—identified as Gilmer—and asked to see her driver's license and proof of insurance. In response, Gilmer walked to the passenger side door of the vehicle and started to open the door. As she did so, the officer followed her. When he shined his flashlight into the vehicle, he noticed what appeared to be a person lying in the backseat partially covered with a leg sticking out from underneath some type of covering. The officer testified that he suspected that the person who was lying down in the backseat was attempting to hide from him.

2

As Gilmer looked in her purse for the requested documents, the officer asked her who was in the backseat. In response, Gilmer said: "I'm sure you probably know him" and ultimately identified the person to be "Chris Hill." As Gilmer pulled her license from her wallet, the officer asked her: "Didn't I arrest him a couple of weeks ago?" Gilmer responded: "Probably." After Gilmer gave him her driver's license, the officer told her to "sit tight" as he went to run the information through dispatch.

The officer then walked back to his patrol car with Gilmer's driver's license and spoke with dispatch. While doing so, the officer also asked dispatch to run the name of Christopher Hill for possible warrants. Dispatch informed the officer that Hill had outstanding warrants. After learning about the warrants, the officer requested back-up because Hill "was in the back seat of the vehicle trying to hide." When the officer got out of his patrol car, he told another officer who had arrived at the scene that Hill had a warrant. He then told Gilmer that Hill was going to jail. Gilmer told the officer that they were headed to the Sedgwick County Jail so that Hill could serve a sanction for a probation violation.

It does not appear from a review of the video that the officer returned Gilmer's license to her at that point. After speaking to Gilmer, the officer went to the passenger side of the vehicle and opened the door. The officer told Hill to get out of the vehicle and advised him that he had a warrant out for his arrest. After Hill complied, the officer placed him under arrest and searched him. While Hill was being placed in a patrol car, the officer went back to talk to Gilmer and asked her several questions about whether there was anything illegal in the car. Gilmer claimed that Hill was clean and did not have any drugs.

The officer asked Gilmer if Hill had a bag or anything in the vehicle that belonged to him. Gilmer confirmed that he did. The officer then directed Gilmer to sit on the curb while he had his dog go around the vehicle to perform a drug sniff. Gilmer asked the

3

officer why and said: "I'm the driver, and I'm the owner of the vehicle, and I don't have anything like that." The officer responded that he had a narcotics-trained canine and said that it is "a rule that I can go around the car and perform a free-air sniff."

The officer then had his dog go around the perimeter of the vehicle. In doing so, the dog "hit" on the passenger side of the vehicle. Afterward, the officer returned to the patrol car and read Hill his *Miranda* rights. After some preliminary questioning, Hill admitted to the officer that he had drug paraphernalia in his backpack located in Gilmer's vehicle.

After talking to Hill, the officer conducted a search of Gilmer's vehicle. During the search, the officer found—among other things—a black backpack in the backseat near where Hill had been lying. In looking through the backpack, the officer found a used syringe, 20 empty baggies, and a white crystallized substance with residue inside one of the baggies. During his testimony at the suppression hearing, the officer further testified that he told Gilmer that he made the decision to conduct the drug-sniff with his dog because Hill had a prior drug history.

After hearing the officer's testimony and reviewing the video from his body camera, the district court heard the arguments of counsel. Several weeks later, the district court issued an eight-page written order granting Hill's motion to suppress the evidence seized from the backpack found in Gilmer's vehicle. In particular, the district court found that, at the time of the search, "[t]he driver was obviously still in custody . . . and two officers were standing watch of the driver." The district court also found that the officer "still had the license of the driver" at the time the free-air search was conducted.

Based on the evidence presented, the district court concluded that the officer's actions "indicate[d] he had no suspicions of illegal activity on the part of the driver and that she and the vehicle were going to be released once the car was searched." Ultimately,

4

the district court identified the issue as whether the officer had "a reasonable suspicion of criminal activity to prolong the traffic stop . . . to deploy his drug sniffing canine?"

The district court noted that the officer did not articulate what crime he was investigating when he deployed his dog to perform the free-air sniff. Instead, the district court noted that the officer had testified that he "had a hunch" before he "corrected himself to having more than a hunch that something is occurring but he couldn't tell exactly what crime was occurring." Although the district court understood that Hill hiding in the backseat of the vehicle may have given the officer reasonable suspicion that he may have warrants out for his arrest, "[t]he closest the officer comes to indicating why the drug dog was run was [because of] prior dealings with Mr. Hill would lead him to believe that 'there was a chance' that illegal narcotics would be in the vehicle."

Ultimately, the district court ruled that although the stop of the vehicle and Hill's arrest on the outstanding warrants were legal, the officer did not have reasonable suspicion to continue to detain Gilmer after dispatch cleared her driver's license and said she did not have any outstanding warrants. Accordingly, the district court suppressed the evidence seized in Hill's backpack and, thereafter, the State timely filed this interlocutory appeal.

ANALYSIS

The sole issue in this appeal is whether Hill lacked standing to claim an expectation of privacy under the circumstances presented. It is important to recognize that the State asserts Hill's lack of standing for the first time on appeal. As a result, this issue was not ruled upon by the district court. Nevertheless, standing is a component of subject matter jurisdiction and is an issue that may be raised for the first time on appeal. *State v. Gilbert*, 292 Kan. 428, 431, 254 P.3d 1271 (2011).

Generally, the State has the burden to prove that the officer's search and seizure was lawful in order to avoid suppression of the evidence. See *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). However, whether standing exists is a question of law subject to unlimited review. *Gilbert*, 292 Kan. at 431-32. Although our review is made more difficult due to the State's failure to raise the standing argument before the district court, we find the bodycam video evidence—coupled with the officer's testimony at the suppression hearing—to be sufficient for us to conduct a meaningful review of the issue of whether Hill has standing to challenge the motion to suppress the evidence.

A defendant cannot object to the seizure of evidence without first establishing that he or she has standing to challenge the search that led to the seized evidence. In order to establish standing, a defendant must demonstrate that he or she has an expectation of privacy in the property searched. *State v. Gonzalez*, 32 Kan. App. 2d 590, 593, 85 P.3d 711 (2004); see *Gilbert*, 292 Kan. at 432. Furthermore, in *State v. Ralston*, 45 Kan. App. 2d 1024, 1027, 257 P.3d 814 (2011), a panel of this court stated:

> "'[A] defendant cannot object to the seizure of evidence without proper standing to challenge the validity of the search. On the issue of standing, the burden is on the defendant to show an expectation of privacy in the property searched. A defendant may testify at a suppression hearing to establish his or her standing to challenge a search without jeopardizing his or her defense at trial.' [Citations omitted.]"

So the test to determine standing hinges on whether the individual had an expectation of privacy in the area searched. See *State v. Worrell*, 233 Kan. 968, Syl. ¶ 1, 666 P.2d 703 (1983). In *Worrell*, the Kansas Supreme Court explained that a Fourth Amendment protection from unreasonable searches is based on an individual's right to privacy, and that there is no right to privacy if the person claiming such a right does not have an expectation of freedom from intrusion. 233 Kan. at 970. If a person lacks either an ownership or possessory interest in property, the individual does not have a legitimate

6

expectation of privacy in that property. *State v. Cox*, 51 Kan. App. 2d 596, 599, 352 P.3d 580 (2015) (citing *State v. Wickliffe*, 16 Kan. App. 2d 424, 429, 826 P.2d 522 [1992]).

In *Gilbert*, the Kansas Supreme Court confirmed that a passenger generally lacks standing to challenge the search of a vehicle unless he or she can show a possessory interest in the vehicle or demonstrate a reasonable expectation of privacy with regard to the vehicle or its contents. 292 Kan. at 433, 435-36. As our Supreme Court noted, the argument that merely being a passenger in a vehicle affords a defendant a reasonable expectation of privacy was rejected by the United States Supreme Court. *Gilbert*, 292 Kan. at 435 (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 [1978]). See *State v. Epperson*, 237 Kan. 707, 716-17, 703 P.2d 761 (1985) (passenger lacked standing to challenge the search of a vehicle because he did not testify that he had an ownership interest in the cocaine or a reasonable expectation of privacy in the contents of the vehicle).

In this case, a review of the record reflects that Hill expressed a possessory interest in the backpack found in the backseat of Gilmer's vehicle. In its brief, the State seems to overlook or ignore this evidence that was presented during the suppression hearing. As the bodycam video shows, when the officer asked if had anything drug related in the vehicle, Hill responded that he had drug paraphernalia in his backpack.

In *Cox*, a panel of this court held that a defendant had a legitimate expectation of privacy in a shopping bag that she left in a friend's car. 51 Kan. App. 2d at 600.

"When considering an individual's standing to challenge the warrantless search of a container which is being transported from place to place, it is important to note that '[t]he owner of such a container cannot be said to have lost standing merely because he is not openly exercising direct control of it at the time of the search.' 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014). In fact, the owner of a container continues to have standing 'after he has . . . put it into the hands of another person' regardless of whether the

officer knows the identity of the owner. 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014). Only if the owner abandons the container or 'leaves it in circumstances manifesting no justified expectation of privacy' will the owner lack standing to challenge a search of that container. 6 LaFave Search & Seizure § 11.3(f) (5th ed. 2014)." 51 Kan. App. 2d at 599-600.

In *Cox*, both the defendant and her friend identified the shopping bag as belonging to her, and she maintained an expectation of privacy by leaving the shopping bag in her friend's car. There is no indication that the shopping bag was abandoned or left in a place that one would not expect privacy. 51 Kan. App. 2d at 600. See *State v. Hays*, No. 106,374, 2012 WL 6061556, at *4 (Kan. App. 2012) (unpublished opinion) (finding standing when defendant expressed ownership of a lockbox located within another's vehicle; in addition, finding the defendant had not abandoned or waived the issue of standing by failing to brief the issue). We find both of these cases are similar to the present case.

We note that in *State v. Sumner*, 210 Kan. 802, 804, 504 P.2d 239 (1972), the Kansas Supreme Court found a defendant did not have standing to challenge a search of someone else's property. Unlike the present case, the defendant in *Sumner* did not claim either an ownership or possessory interest in the property. Under those circumstances, our Supreme Court understandably concluded that the defendant did not have a reasonable expectation of privacy over property which he had expressed no possessory or proprietary interest. 210 Kan. at 804.

We also recognize the defendant bears the burden to prove standing. *State v. Talkington*, 301 Kan. 453, 476, 345 P.3d 258 (2015). Of course, the defendant had no opportunity to do so below because the State did not raise standing as an issue. Regardless, there is sufficient uncontroverted evidence in the record to establish that Hill admitted ownership of the backpack in which the drugs and drug paraphernalia were found.

8

Significantly, the State does not challenge the district court's findings that the officer did not have reasonable suspicion to search Hill's backpack. Additionally, the State does not assert that any other exception to the warrant requirement applies, nor does it suggest that the search of Hill's backpack was justified as part of a search incident to arrest. By the time the backpack was searched, Hill was already under arrest and being detained in the backseat of a patrol car.

In conclusion, we find that the record contains sufficient evidence that the backpack in question belonged to Hill and that it had not been abandoned. Moreover, Hill took the position that he had a legitimate expectation of privacy in the backpack in filing the motion to suppress the evidence seized during its search. Likewise, the State did not contest Hill's standing to move to suppress this evidence below. Because the record clearly shows that Hill admitted to owning the backpack, we conclude that he had a reasonable expectation of privacy in its contents and had standing to challenge the warrantless search.

We, therefore, affirm the district court's decision to suppress the evidence found in the warrantless search of Hill's backpack.

Affirmed.