NOT DESIGNATED FOR PUBLICATION

No. 123,064

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUJUAN M. GIBSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed October 29, 2021.
Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant, and *Jujuan M. Gibson*, appellant pro se.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: Jujuan M. Gibson appeals from his convictions for possession of methamphetamine, cocaine, and marijuana with intent to distribute. The charges stemmed from the discovery of drugs during an August 2019 traffic stop of a vehicle in which Gibson was a backseat passenger. He argues the district court erred in denying a motion to suppress the evidence found during the search for lack of standing, and he also challenges the sufficiency of the evidence showing actual or constructive possession of the drugs leading to his convictions. After reviewing the issues presented, we are not persuaded by Gibson's arguments and therefore affirm his convictions.

1

The State charged Gibson with one count each of possession with intent to distribute 100 or more grams methamphetamine, a severity level 1 drug felony; possession with intent to distribute at least 100 grams but less than 1 kilogram of cocaine, a severity level 2 drug felony; and possession with intent to distribute at least 25 grams but less than 450 grams of marijuana, a severity level 3 drug felony. These charges arose after officers found drugs during a traffic stop of a vehicle in which Gibson was a backseat passenger.

Before trial, Gibson moved to suppress the evidence seized during the vehicle search. Gibson argued the officer lacked probable cause to search the vehicle because the legalization of marijuana in other states and the legalization of hemp in Kansas has made the odor of marijuana "as consistent with lawful activity as it is with criminal activity," and thus could no longer establish probable cause. The State responded to the suppression motion, contending primarily that Gibson lacked standing to challenge the vehicle search because he was a passenger, but also that the officer had reasonable suspicion to initiate the stop and probable cause plus exigent circumstances to search the vehicle.

The district court took up the suppression motion at a hearing in February 2020. The State called Newton Police Officer Skyler Hinton as a witness, who testified that on the August 2019 night in question around 9 p.m., he observed a white Cadillac SUV driving on I-35 in Harvey County, Kansas. As the vehicle passed, Hinton noticed there was no tag light illuminating the license plate. Hinton decided to initiate a traffic stop.

Officer Hinton testified that after the vehicle pulled over, he saw it had a temporary tag from Kentucky. As he approached the passenger side window, he noticed all four windows were rolled down. According to Hinton, this struck him as "odd" because it was August and the windows were not rolled down as the vehicle passed. He

observed two individuals sitting in the middle seats along with the driver. Hinton also smelled the "overwhelming odor of marijuana coming from the vehicle," specifically saying, "[I]t smelled like raw marijuana." Based on his training and experience, Hinton knew that raw marijuana had a different odor than burnt marijuana.

Officer Hinton contacted the driver, Keith Brock, who identified himself as the owner of the vehicle. As Hinton began asking Brock questions, Gibson responded and asked why they were stopped. Hinton explained to Gibson that he stopped the vehicle because of the license plate light not being illuminated. When Hinton gathered documentation, he asked Brock where they were coming from. Again, Brock did not respond but Gibson said they were coming from "up the road" and pointed towards Newton. Gibson asked about the name of the town, but nobody could tell him. He asked where, to which Gibson responded they were visiting friends but could not tell him where or where they just came from. Hinton specifically asked if they knew where they were, and Brock said "they had no idea." During this conversation with Gibson, Brock interjected to say they "didn't know where they were coming from" and were traveling from Arizona to Kentucky. Hinton believed it was "odd" to travel through Newton based on their travel plans.

Officer Hinton testified that he decided to call for backup and once other officers arrived, the occupants were asked to exit the vehicle. At that point, Hinton identified several factors that suggested some sort of drug activity: (1) the route they were taking, (2) all four windows being rolled down, (3) Gibson asking and answering questions instead of Brock, (4) being unable to answer simple questions about travel history, and (5) the odor of marijuana. According to Hinton, he decided to detain all three individuals for safety reasons during the search because they were on the side of a highway. Hinton also said Gibson never claimed ownership of the vehicle.

3

During cross-examination, Officer Hinton testified he knew that marijuana is legal in some capacity in Colorado, Oklahoma, and Missouri. He denied having any specific training to recognize the odor of hemp.

After hearing arguments from the parties, the district court first concluded that Gibson, as a passenger who claimed no ownership of the vehicle, lacked standing to challenge the search of the vehicle. As for the traffic stop, the court noted there was no evidence to refute that the tag light was out, thus the officer had reasonable suspicion to initiate the stop. The court also noted that even if Gibson had standing to challenge the search, the officer had probable cause to search the vehicle based on the odor of marijuana and additional factors present. Thus, the court denied the motion to suppress.

Officer Hinton testified at the jury trial about the events on the evening of the vehicle stop in August 2019. His testimony about the reasons for the stop and his interactions with driver Brock and passenger Gibson substantially mirrored his description of events made at the suppression hearing.

At trial, Officer Hinton testified that during the conversations he had with Brock and Gibson while at the side of the vehicle, he noticed an "overwhelming smell of raw marijuana" coming from the vehicle. Hinton testified that he had received training in drug interdiction and controlled substances in his experience as a police officer. He recognized the odor based on investigations in several other marijuana-related cases. Hinton described the odor as "very pungent, I guess. It's a very noticeable—even small minute amounts of it can be very—have a very strong odor."

Officer Hinton also testified that Gibson would not directly answer any questions about ownership of the vehicle, telling him to check the tag which was registered to Brock. However, Hinton later found two bills of sale for the vehicle: one that listed Brock as the owner and a second that listed Gibson as the owner. The bill of sale listing

4

Gibson as the owner had a purchase date of July 29, 2019, and the bill of sale listing Brock as the owner had a purchase date of August 4, 2019. The district court admitted these over Gibson's hearsay objection.

Officer Hinton testified that once he decided to search the vehicle, he requested additional officers to respond to his location to assist and remove the occupants from the vehicle. According to Hinton, this was his typical process based on the number of occupants and for safety reasons. Upon searching the vehicle, Hinton found a "large grocery style bag wrapped numerous times" inside a compartment above the rear driver's side tire. This "flip cubbyhole" was located directly behind where Gibson was seated in the vehicle. Inside the grocery bag was a gallon-size Ziploc style bag that contained a "hard rock crystalline substance" Hinton believed to be methamphetamine, as well as a similar bag containing a white powder that he believed to be cocaine.

Officer Hinton also found another grocery style bag inside a "natural factory void" above the rear driver's side tire that contained two black containers. Hinton recognized these black containers as typically used by dispensaries to sell and transport marijuana. The black containers also had labels affixed that reflected the type of marijuana or the location of the dispensary. Inside the containers, Hinton found a green leafy substance he recognized as marijuana.

The State moved to admit these items as exhibits, prompting an objection from defense counsel for the reasons stated in the motion to suppress. The district court overruled these objections, standing on its prior ruling.

Officer Hinton later weighed these items and determined the crystalline substance weighed 2.01 pounds, the powder substance weighed 28.6 ounces, and the green leafy substance weighed 78.8 grams. A KBI forensic analyst tested these substances, confirming that the crystalline substance was methamphetamine, the powder substance

was cocaine, and the green leafy substance was marijuana. Because of his training and experience, Hinton believed that the amount of drugs and the packing suggested distribution and not personal use.

The vehicle search also revealed two cell phones, a black one found near the driver's seat and a blue one that was found in the second row passenger area. When Officer Hinton approached the vehicle before having Gibson exit, Gibson was leaning over to his right-hand side towards the area of the blue phone. Hinton at first believed the blue phone belonged to the other backseat passenger based on its proximity to her location in the vehicle. The district court admitted the blue phone as an exhibit over Gibson's objection.

On cross-examination, Officer Hinton admitted that Gibson did not appear to be under the influence of any substance during the traffic stop and no illegal substances were found on his person. Searching officers also found no scales or firearms during the vehicle search. All the drugs discovered were hidden behind manufactured panels in the vehicle. Gibson denied any knowledge of the drugs.

Newton Police Lieutenant Mike Yoder testified that he was specialized in cell phone forensics and extracted a download of the data from the blue phone seized during the traffic stop. Newton Police Detective Mitch Nedrow testified that he was the senior narcotics investigator for the Newton Police Department and had specialized training and experience in handling drug investigations. Detective Nedrow testified that Lieutenant Yoder was unable to produce a download and report from the black phone because of the encryption software, but he produced a flash drive with information obtained from the blue phone.

Detective Nedrow testified that Gibson appeared to be the owner of the blue phone based on the contents of the text messages. In particular, one message asked, "[W]ho is

6

this," to which the subject replied, "Jujuan." Another message came from a contact saved as "Mommy," which said, "I love you, Jujuan." Detective Nedrow said there were additional messages, but these were two that specifically stated Gibson's name. Another message came from the female passenger of the vehicle—which Detective Nedrow confirmed by comparing the phone number she gave during booking—that stated, "I can't do this, dude." In addition, using that same process of comparing the number given during booking, Detective Nedrow determined that Brock sent a message to the phone saying, "Can I have keys to move this to the shade?"

Detective Nedrow believed the following exchange between a contact saved as "Macl" at 5:40 a.m. on August 3, 2019, suggested the purchase of 20 ounces of cocaine for $750:

Macl: "Need you, bro, right when you get up."
Subject: "What you need, bro?"
Macl: "20 of them."
Subject: "20 what?"
Macl: "Gs"
Subject: "Already ready."
Macl: "Give me five minutes."
Subject: "Shoot me 750."

Detective Nedrow believed another exchange at 7:28 p.m. that same day with Macl suggested the sale of either a quarter pound of marijuana or a quarter ounce of cocaine:

Macl: "I got to stop at the crib and get bread real quick. 400 right."
Subject: "For what?"
Macl: "QT."

On August 5, 2019, a contact saved as "11:00 a.m." texted the subject phone "1750 right now." Detective Nedrow believed this message indicated either an offer to supply the subject or purchase from them at that price.

Detective Nedrow also testified about photographs taken from the phone. Exhibit 7A depicted the white Cadillac SUV that was the subject of the traffic stop and vehicle search. Exhibit 7B depicted a personal photograph of Gibson and the female passenger. Exhibit 7C depicted a selfie of Gibson holding a large amount of money. Exhibit 7D depicted a large amount of money fanned out in the hands of a Black male. Exhibit 7E depicted a tabletop with a large amount of money, some of which was rubber banded together, as well a shoe box and trash bags. Exhibit 7F depicted a large amount of gallon-size zip bags containing vacuum seal bags, and some similar bundles. Nedrow believed these contained vacuum sealed marijuana, based on his training and experience. Exhibit 7G depicted a close-up photograph of a black digital scale with a plastic baggie on top containing what appeared to be marijuana. The district court admitted these photographs over Gibson's objection.

Detective Nedrow testified that Gibson was the owner of the phone based on the information in the text messages and photographs, and further that he was involved in a drug distribution network.

After the State rested and the parties finalized the jury instructions, Gibson moved for acquittal. As support, Gibson primarily argued the evidence failed to show he knew about or had actual or constructive possession of the drugs seized during the traffic stop. The district court denied the motion. The case was then submitted to the jury, which ultimately found Gibson guilty on all three charges.

Gibson subsequently filed a motion for new trial/renewed motion for judgment of acquittal in March 2020, asserting several claims of error. Relevant to this appeal, Gibson

argued that the district court erred in denying his suppression motions and that there was insufficient evidence to find him guilty beyond a reasonable doubt of the charged offenses.

At sentencing, the district court began by finding Gibson's criminal history score to be A. The court then denied Gibson's motion for new trial/renewed motion for judgment of acquittal and imposed a controlling prison sentence of 98 months. This sentence represented a downward durational departure on count 1, which the court ran concurrent with the standard presumptive sentences for counts 2 and 3.

Gibson has timely appealed from his convictions and sentences.

ANALYSIS

We note that Gibson initially raised eight total issues in his appellate counsel's brief. However, after Gibson submitted a pro se supplemental brief and consulted with his appointed counsel, we granted his request to withdraw issues 2, 3, and 5-8 from the counselled brief. This leaves only Gibson's challenge to the sufficiency of the evidence used to convict him and his contention that the district court erred in denying his motion to suppress the evidence.

In order to deal with Gibson's remaining issues in logical order, we will first consider Gibson's challenge to the denial of his suppression motion because if that issue is resolved in his favor, it could make consideration of his sufficiency of evidence challenge unnecessary.

*The district court correctly denied Gibson's motion to suppress.*

Gibson argues the district court erred in denying his motion to suppress the evidence obtained during the vehicle search. The crux of his challenge is that the officer lacked probable cause for the vehicle search because the odor of marijuana does not confirm illegal activity since Kansas recently legalized the growth of hemp for research purposes. In a pro se supplemental brief, Gibson also argues the officer unlawfully detained him before searching the vehicle.

The State contends Gibson lacks standing to challenge the vehicle search because he was merely a passenger. Alternatively, the State asserts that even if we reach the merits of the suppression issue, the officer had probable cause because of other factors present. The State also disagrees with Gibson's premise that the legalization of hemp for research purposes in Kansas means the odor of marijuana no longer suffices as probable cause to search a vehicle for marijuana.

When the district court has denied a motion to suppress, the moving party must still object to the introduction of that evidence when it was offered at trial to preserve the issue for appeal. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). Gibson moved to suppress the evidence seized during the vehicle search—in this case, methamphetamine, cocaine, and marijuana found in compartments in the back of the vehicle—before trial. After the district court denied this motion for lack of standing and alternatively because the officer had probable cause to justify the search, Gibson objected to admission of the drugs at trial. Thus, Gibson preserved his challenge to the admission of the drugs for the purpose of appeal.

The standard of review for a district court's decision on a motion to suppress has two components. First, we review the district court's factual findings to determine whether they are supported by substantial competent evidence. Second, we review the

ultimate legal conclusion using a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018) (warrantless search of vehicle).

When, as here, the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which we have unlimited review. 307 Kan. at 827.

As noted, the State contends that, as a passenger in the vehicle, Gibson has no standing to challenge the officer's search of the SUV. Standing is a component of subject matter jurisdiction, which may be raised for the first time on appeal. Whether standing exists is a question of law subject to unlimited review. *State v. Gilbert*, 292 Kan. 428, 431, 254 P.3d 1271 (2011).

To have standing to seek suppression of evidence, a defendant in a criminal case must have a legitimate expectation of privacy in the place searched. The defendant bears the burden to prove standing. *State v. Talkington*, 301 Kan. 453, 476, 345 P.3d 258 (2015). A person who lacks "'an ownership or possessory interest in the property searched has little legitimate expectation of privacy in that property.'" *State v. Cox*, 51 Kan. App. 2d 596, 599, 352 P.3d 580 (2015).

Gibson contends he has standing to challenge the vehicle search because of his status as a "social guest" invited into the vehicle, thus giving him a legitimate expectation of privacy. As support, he cites several decisions from the United States Supreme Court which he asserts "made it clear that social guests usually take on the Fourth Amendment protection of their hosts."

The starting point for Gibson's analysis is *Rakas v. Illinois*, 439 U.S. 128, 148-49, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), in which the United States Supreme Court

recognized that defendants who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," and who failed to show a legitimate expectation of privacy in the areas searched, lacked standing to challenge the vehicle search. Gibson points out that in reaching that conclusion, the *Rakas* Court rejected the premise that a person "'legitimately on premises'" always has a legitimate expectation of privacy in the premises, but still acknowledged the "unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." 439 U.S. at 142.

Gibson also correctly notes that the Supreme Court recently acknowledged that "[o]ne who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it." *Byrd v. United States*, 584 U.S. __, 138 S. Ct. 1518, 1527, 200 L. Ed. 2d 805 (2018). In *Byrd*, the Supreme Court rejected the government's "misreading" of *Rakas* to support the proposition that "passengers do not have an expectation of privacy in an automobile glove compartment or like places." 138 S. Ct. at 1528. Seizing on this discussion of *Rakas*, Gibson contends that more recent cases "logically stand for the proposition that most social guests in a car would have *whatever* expectation of privacy—and hence protection against unreasonable searches— as the car's owner." Put simply, Gibson's argument is unpersuasive because it does not accurately reflect the caselaw surrounding automobile searches.

For instance, Gibson cites *Minnesota v. Olson*, 495 U.S. 91, 96-97, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990), in which the United States Supreme Court held that an overnight guest in an upstairs duplex had a reasonable expectation of privacy in the home, and thus had standing to challenge a warrantless entry into the home to secure his arrest. Then, he cites *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998), in which the Supreme Court differentiated the type of overnight guest in Olson from someone "who is merely present with the consent of the householder." *Carter*

involved codefendants who had gone to an apartment for the sole purpose of packaging cocaine, and the Supreme Court held they lacked a legitimate expectation of privacy in the apartment because they were "essentially present for a business transaction and were only in the home a matter of hours." 525 U.S. at 90; see *New York v. Burger*, 482 U.S. 691, 700, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987) ("An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home.").

But *Olson* and *Carter* involved searches of homes, and as Gibson admits, courts have long held that automobiles are subject to lesser expectations of privacy than homes. See *California v. Carney*, 471 U.S. 386, 390, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) (acknowledging that *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 [1925], first recognized that privacy interests in an automobile afford a lesser degree of protection than homes).

The Kansas Supreme Court has also confirmed that a passenger generally lacks standing to contest a vehicle search unless they can show a possessory interest in the vehicle or demonstrate a reasonable expectation of privacy with regard to the vehicle or its contents. *Gilbert*, 292 Kan. at 433, 435-36; see also *State v. Epperson*, 237 Kan. 707, 716-17, 703 P.2d 761 (1985) (passenger lacked standing to challenge vehicle search because he did not testify at suppression hearing that he had ownership interest in drugs discovered during vehicle search or reasonable expectation of privacy in contents of vehicle).

In a postbriefing letter provided to us by the State under Supreme Court Rule 6.09 (2021 Kan. S. Ct. R. 40), our attention is called to a recent case where the United States Supreme Court has once again affirmed that vehicles and homes are different for purposes of the reasonableness of searches under the Fourth Amendment to the United States Constitution. In *Caniglia v. Strom*, 593 U.S. __, 141 S. Ct. 1596, 1600, 209 L. Ed.

13

2d 604 (2021), the Court states: "What is reasonable for vehicles is different from what is reasonable for homes." In its Rule 6.09 letter, the State argues that, based on *Caniglia*, "there is no precedent for expanding the 'social guests' doctrine applied to homes to vehicles." We agree with the State's contention.

As the State also correctly points out, Gibson provides no authority to support extending the social guest doctrine to vehicles. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). Moreover, this court is duty-bound to follow Kansas Supreme Court precedent absent some indication of a departure from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Thus, unless Gibson can show he had an ownership or possessory interest in the vehicle, this court must conclude he lacked standing to challenge the vehicle search.

Gibson contends he established an ownership or a possessory interest in the vehicle based on his behavior during the traffic stop, by taking "control" of the situation and answering the questions Officer Hinton was asking the driver. Again, he provides no authority supporting the premise that his actions during the traffic stop established ownership or possession of the vehicle or indicated he had a legitimate expectation of privacy to contest the vehicle search.

Gibson also points out that the State at first claimed he lacked standing to challenge the vehicle search because he had no possessory interest in the vehicle but then presented evidence at trial establishing his ownership of the vehicle and drugs found in it. In particular, he notes the State presented pictures of the vehicle from Gibson's phone and a bill of sale indicating Gibson purchased the vehicle at trial.

Although Officer Hinton indeed testified at the suppression hearing that Gibson was answering questions posed to the driver, he also testified that Gibson specifically denied owning the vehicle or the drugs found inside. Gibson's objection to the State's inconsistent positions about vehicle ownership is easily dismissed, because, as the State correctly notes, Gibson was free to take the stand at the hearing and assert ownership or control of the vehicle to establish standing because the State could not use that testimony later at trial. See *Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) (testimony given in an attempt to establish standing cannot be admitted "at trial on the issue of guilt."); *Talkington*, 301 Kan. at 476 ("'A defendant may testify at a suppression hearing to establish his or her standing to challenge a search without jeopardizing his or her defense at trial.'"). Put simply, Gibson failed to establish an ownership or possessory interest in the vehicle at the suppression hearing, so the district court correctly concluded he lacked standing to challenge the vehicle search. Because of this failure, we find that the district court properly denied his motion to suppress for lack of standing.

But even if Gibson was able to establish his standing to challenge the search of the SUV, we believe Officer Hinton still had probable cause to search the vehicle.

The Fourth Amendment prohibits unreasonable searches and seizures. Warrantless searches are per se unreasonable unless they fall within an exception to the warrant requirement. *State v. Hubbard*, 309 Kan. 22, 33, 430 P.3d 956 (2018). The exception relied on by the State was probable cause plus exigent circumstances. *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017) (searches of automobiles permitted if there is probable cause; mobility of vehicle provides exigent circumstances without necessity of proving anything more).

Probable cause to search a vehicle exists when the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or evidence of a

15

crime. *State v. Jefferson*, 297 Kan. 1151, 1159, 310 P.3d 331 (2013). When analyzing the totality of the circumstances, this court will consider "'all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004) (quoting *State v. Abbott*, 277 Kan. 161, Syl. ¶ 3, 83 P.3d 794 [2004]).

Even assuming Gibson had standing, he must still show the officer lacked probable cause to search the vehicle to be entitled to relief. Gibson argues the officer lacked probable cause to search the vehicle based on the odor of marijuana because recent legislative changes legalized the growth of hemp in Kansas. According to Gibson, the smell of hemp and marijuana is indistinguishable, so the odor of marijuana alone cannot establish probable cause since there could be a potentially legal source.

Gibson starts by acknowledging that the Kansas Supreme Court has long recognized that the odor of marijuana coming from a vehicle is sufficient probable cause for a warrantless vehicle search. See *State v. MacDonald*, 253 Kan. 320, 324-25, 856 P.2d 116 (1993); see also *State v. Kirk*, 40 Kan. App. 2d 817, 820, 196 P.3d 407 (2008) (finding that odor of either burned or raw marijuana is sufficient for probable cause). By contrast, Gibson correctly notes that the Kansas Supreme Court has also held that the odor of alcohol or ether emanating from a vehicle does not alone establish probable cause for a search. See *State v. Stevenson*, 299 Kan. 53, 59, 321 P.3d 754 (2014) (holding that strong odor of alcohol, standing alone, does not constitute probable cause to search vehicle for open container of alcohol); *State v. Ibarra*, 282 Kan. 530, 543, 147 P.3d 842 (2006) ("The strong odor of ether emanating from a house or a vehicle is as consistent with lawful activity as it is with criminal activity.").

Gibson asserts the bright-line rule announced in *MacDonald* is no longer valid—at least pertaining to the smell of raw marijuana—because of recent legislative changes allowing the growth of hemp in Kansas. Indeed, the Legislature enacted the Alternative

Crop Research Act in 2018, which for the first time authorized the cultivation of industrial hemp for research purposes in Kansas. L. 2018, ch. 62, § 1. And about a year later, the Legislature began allowing commercial cultivation and production of industrial hemp as well and adopted a new name: the Commercial Industrial Hemp Act. L. 2019, ch. 37, § 7. See K.S.A. 2020 Supp. 2-3901 et seq.

According to Gibson, hemp "smells nearly identical to raw marijuana," so the officer could not rely on the odor of marijuana alone to establish probable cause for the vehicle search here. See, e.g., *United States v. Harris*, No. 4:18-CR-57-FL-1, 2019 WL 6704996, at *3 (E.D.N.C. 2019) (unpublished opinion) (arguing that officers are "not trained to distinguish the smell of illegal marijuana from legal hemp flower"); *United States v. Bignon*, No. 18-CR-783 (JMF), 2019 WL 643177, at *2 n.2 (S.D.N.Y. 2019) (unpublished opinion) (clarifying that it was reasonable inference that the smells would be similar because it is indisputable scientific fact that hemp and marijuana are varieties of same species).

But again, Gibson provides no authority showing that our Supreme Court is reconsidering the holding from *MacDonald*, and more recent appellate decisions reflect otherwise. See *Hubbard*, 309 Kan. 22, Syl. ¶ 5 ("The totality of the circumstances surrounding a law enforcement officer's detection of the smell of raw marijuana emanating from a residence can supply probable cause to believe the residence contains contraband or evidence of a crime."); see also *State v. Goff*, 44 Kan. App. 2d 536, 540, 239 P.3d 467 (2010) (odor of raw marijuana is sufficient by itself to establish probable cause to search a vehicle); *Kirk*, 40 Kan. App. 2d at 820. Based on these decisions, we could simply decline to discuss the issue further based on the rule that we must follow Kansas Supreme Court precedent absent some indication of a departure from a previous position. *Rodriguez*, 305 Kan. at 1144.

17

But even accepting the premise of Gibson's argument, the odor of raw marijuana was not the only factor mentioned by the officer in his probable cause determination. Officer Hinton testified at the suppression hearing that other factors included: (1) all four windows on the SUV were rolled down when he approached it, despite being rolled up when the SUV passed; (2) Gibson was asking and answering the officer's questions instead of the driver; (3) the occupants did not know what town they were coming from or where they were; and (4) they claimed to be travelling through the area on their way from Arizona to Kentucky. The district court denied Gibson's suppression motion for lack of standing but also mentioned these additional factors supported a finding of probable cause. Yet, Gibson does not mention any of these additional factors in his brief, instead arguing only that the odor of raw marijuana does not suffice as probable cause for a vehicle search. See *Salary*, 309 Kan. at 481 (issues not adequately briefed are deemed waived or abandoned).

After careful consideration, we conclude that Officer Hinton had probable cause to believe the SUV contained evidence of a crime based on the totality of circumstances. Even if the odor of raw marijuana alone did not establish probable cause, that was only one of the factors the officer relied on in making the probable cause finding. Moreover, the officer could fairly infer that the odor of raw marijuana combined with the additional factors mentioned—the windows being rolled down, Gibson answering questions instead of the driver, and the lack of information about travel history—plus the late hour of the traffic stop suggested the vehicle contained evidence of a crime.

But even if we did conclude that probable cause was lacking, the good-faith exception would prevent suppression because published Kansas appellate caselaw has consistently held that the smell of raw marijuana provides probable cause for the search of a vehicle. See *Hubbard*, 309 Kan. at 40-41; *Goff*, 44 Kan. App. 2d at 540-41; see also *Davis v. United States*, 564 U.S. 229, 241, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011)

18

(exclusionary rule does not apply when officers rely on objectively reasonable judicial precedent which is later overruled).

Finally, Gibson raises another argument in his pro se supplemental brief that he was unlawfully detained during the vehicle search and that he should have been free to leave after being asked to exit the vehicle before the search. Gibson thus asserts that, because of his unlawful detention, any resulting evidence seized during the stop should be suppressed as fruit of the poisonous tree. See *Epperson*, 237 Kan. at 719 (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 [1963]).

As the State points out, this argument is unpersuasive for the simple fact that Gibson's detention did not lead to the discovery of any evidence. Even assuming he was unlawfully detained, that would not affect the suppression of the drugs seized here because he lacks standing to challenge the vehicle search.

But more importantly, Gibson's detention here was lawful. The same factors supporting a probable cause finding to search the vehicle would likewise support detaining all three individuals to investigate suspected drug crimes. *State v. Cash*, 313 Kan. 121, 127, 483 P.3d 1047 (2021) ("When a detainee's responses and the surrounding circumstances give rise to an objectively reasonable and articulable suspicion that criminal activity is occurring during a traffic stop, an officer can broaden his or her inquiry to satisfy those suspicions."); see also *Goff*, 44 Kan. App. 2d at 539 ("The smell of raw marijuana alone is sufficient to give an officer both reasonable suspicion and probable cause."). Here, the officer had a legitimate reason to believe that Gibson and his travel companions were engaged in criminal activity based on the odor of raw marijuana, along with their responses to questioning about travel plans.

In short, we find that the district court did not err in denying Gibson's motion to suppress the evidence seized during the vehicle search.

*There was sufficient evidence at trial to convict Gibson of the three crimes.*

Gibson also argues there was insufficient evidence to support his convictions because no evidence showed that he possessed the drugs found during the vehicle search. In essence, he contends the evidence merely showed his proximity to the drugs and that he was not even aware of their existence. The State responds that the strong odor of the marijuana showed he was aware of the drugs, but also that other evidence linked him to drug distribution.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder on the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

The State charged Gibson with three counts of possession of controlled substances with the intent to distribute. K.S.A. 2020 Supp. 21-5705(a) makes it "unlawful for any person to distribute or possess with the intent to distribute" any controlled substance. The district court instructed the jury that "[p]ossession means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

As Gibson notes, the Kansas Supreme Court has recognized that "when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016) (citing *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 [1988]). In *Rosa*, the Kansas Supreme Court also discussed other relevant factors to consider included: prior participation in drug sales, use of drugs, proximity to the area where drugs are found, the drugs being found in plain view, and the defendant's incriminating statements or suspicious behavior. 304 Kan. at 434.

Relying on *Rosa*, Gibson contends the only factor suggesting he possessed the drugs discovered was proximity to the drugs. On this point, he asserts "[t]he drugs were found in a rear area that was not within [his] reach and were certainly not in plain view." This assertion somewhat misstates Officer Hinton's testimony, which is that the methamphetamine and cocaine were found in a compartment above the rear driver's side tire located directly behind where Gibson was seated in the vehicle. Then, the marijuana was found in a natural factory void above that same rear tire. In addition, the State admitted as evidence a bill of sale showing that Gibson had purchased the vehicle on July 29, 2019, and a subsequent bill of sale showing that Brock purchased the vehicle five days later. So while true that the drugs were not in plain view, after viewing this evidence in the light most favorable to the State, a rational fact-finder could conclude that Gibson had proximity and a possessory connection to the drugs.

Gibson also points out that there was no evidence showing he had drugs on his person, that he used any controlled substance, or claimed ownership of the drugs found in the vehicle. The State only addresses Gibson's claimed lack of knowledge about the drugs, asserting the jury could infer from Officer Hinton's testimony about the "'overwhelming'" smell of marijuana that Gibson also knew about the marijuana. Similarly, the State points out that the long road trip supported a reasonable inference to

21

reject his claim about the lack of knowledge of the contents of the vehicle. In addition, the fact that Gibson began answering questions for the driver supports a reasonable inference that he was both aware of the drugs and exercised some form of dominion or control over the situation.

The State mainly focuses on the circumstantial evidence that Gibson was involved in prior drug sales to support his convictions. Although Gibson acknowledges that the State presented evidence of text messages and photographs obtained from his phone that connect him to prior drug sales, he challenges whether that evidence connects him to the drugs discovered in the vehicle. But the State presented this evidence not to directly show he possessed the drugs involved here, but rather as circumstantial evidence from which the jury could infer that Gibson was involved in drug distribution. Although the State did not admit the text messages themselves as evidence, the substance of some messages were read and described to the jury with no objection. These messages established that the user of the phone identified himself as Jujuan and participated in likely drug transactions. Moreover, pictures obtained from the phone show large quantities of money and marijuana packaged in such a way to suggest a drug distribution network. Viewing this evidence in the light most favorable to the State, a rational fact-finder could conclude based on this circumstantial evidence that Gibson was involved in a drug distribution network.

In sum, we believe there was sufficient evidence presented to find Gibson guilty in this case. A rational fact-finder could infer based on the circumstantial evidence presented that Gibson was guilty of possessing the controlled substances in this case because of his participation in drug distribution and the fact that he was travelling across multiple states in a vehicle where large quantities of drugs were hidden.

Affirmed.